**HARRIS COUNTY APPRAISAL DISTRICT, Appellant,**

**v.**

**SOUTHEAST TEXAS HOUSING FINANCE CORPORATION and its Subsidiaries Bayou Park Village Apts., Inc., Promenade Place Apts., Inc., Pavilion Place Apts., Inc., And Willows At Rollingbrook, Inc., Appellees.**

No. 07–96–0352–CV.

Court of Appeals of Texas, Amarillo.

June 24, 1998.

Olson & Olson (Kenneth Wall), Houston, for appellant.

Johnson, Radcliffe & Petrov (Ross Radcliffe), Houston, Popp & Ikard (William Ikard, Laurellen E. Ratliff), Austin, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

DODSON, Justice.

Harris County Appraisal District (HCAD) appeals an order exempting certain properties owned by Southeast Texas Housing Finance Corporation and its subsidiary single purpose corporations (Southeast) from ad valorem taxation. By one point of error, HCAD contends that the trial court erred in exempting the properties because they were not owned by a housing finance corporation. By four more points of error, HCAD challenges the legal and factual sufficiency of fact findings filed by the trial court. HCAD contends there was no evidence or insufficient evidence to support the determinations that (1) upon default on the bond indebtedness and foreclosure on its lien, the legal title of the subject properties would vest in Southeast; (2) that because of interlocking boards of directors, Southeast could compel the dissolution of the subsidiaries thereby conveying full legal title to Southeast; (3) that because of interlocking boards of directors, Southeast has the interest and control necessary to ensure that the indebtedness is paid, thereby conveying full legal title to Southeast; and (4) that because of interlocking boards of directors, Southeast can pass resolutions to sell or mortgage the subject properties, by directing its management committee to convene as the board of directors of the subsidiaries and directing them to do so. We affirm.

Southeast is a housing finance corporation existing under the Housing Finance Corporations Act. See Tex. Loc. Gov't Code Ann. §§ 394.001 et. seq. (Vernon 1988 & Supp.1998). As such, its board of directors is composed of representatives from local municipal and county governments. Its purpose is to provide housing to low income and elderly persons. See generally Tex. Loc. Gov't Code Ann. § 394.002(b)(Vernon 1988). Southeast owns subsidiary, single purpose corporations to facilitate its objective. The bylaws of the subsidiaries require that directors of the subsidiaries are also directors of Southeast.

Southeast is authorized under the Housing Finance Corporations Act to issue

bonds to generate funds. Tex. Loc. Gov't Code Ann. § 394.037(Vernon 1988). The money from the bonds is used to purchase and rehabilitate housing properties. Southeast purchases a property, then transfers legal title to a subsidiary corporation created to manage that property. The subsidiary corporations are organized under the Texas Non–Profit Corporation Act. *See* Tex.Rev.Civ. Stat. Ann. art. 1396–1.01 *et seq.* Each subsidiary issues a note and deed of trust in the amount of the bond to Southeast. Southeast then assigns the note and deed to a trustee (typically a bank or other finance institution) as security for financing. The subsidiaries operate, collect rent from tenants, and make payments on the debt. Any excess money produced by the subsidiary inures to Southeast. Under the charters of the subsidiaries, legal title to the properties reverts to Southeast upon full payment of the debt. Similarly, if the subsidiary is dissolved, under its Articles of Incorporation, its property vests in Southeast. By isolating each property from the debt liability of the others in this way, Southeast is able to secure investment for financing the projects.

Initially, HCAD granted tax exemptions on the subject properties for the years of 1991 through 1993. However, in 1993, HCAD canceled those exemptions. The subsidiaries timely protested and appeared before the Appraisal Review Board. The Board denied the protest and affirmed the cancellation. Later, HCAD denied the subsidiaries' applications for exemption in 1994 as well. The subsidiaries timely protested and the Appraisal Review Board affirmed the denial of exemption for 1994. The subsidiaries and Southeast then filed this suit in district court. Following a bench trial, the 295th Judicial District rendered judgment in favor of Southeast and its subsidiaries, ordering HCAD to remove the subject properties from its appraisal roll for 1991–1994. Findings of fact and conclusions of law were filed on August 4, 1995.

■ Findings of fact in a bench trial have the same force as a jury's verdict upon jury questions. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e). However, the findings of fact are not conclusive when a complete statement of facts appears in the record. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e per curiam,* 699 S.W.2d 199 (Tex.1985). The findings of fact are reviewable for factual and legal sufficiency under the same standards that are applied in reviewing evidence supporting a jury's answer. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ). *See also* W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals,* 24 St. Mary's L.J. 1045, 1145 (1993).

■ Moreover, where an appellant challenges both legal and factual sufficiency of the evidence, the appellate court should first review the legal sufficiency challenge. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981); *Koch Oil Co. v. Wilber,* 895 S.W.2d 854, 862 (Tex.App.—Beaumont 1995, writ denied). If an appellant is attacking the legal sufficiency of an adverse finding on which the appellant did not have the burden of proof, the appellant must show on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). The reviewing court considers the evidence in the light most favorable to the finding to determine if there is any probative evidence or reasonable inferences therefrom, which supports the finding. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d at 401. The court disregards all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992).

■ Addressing HCAD's four legal challenges, we note the following evidence in the record. Andrew P. Johnson, III, outside counsel for Southeast, testified

about the structure of Southeast's operation. According to Johnson, the respective corporate charters require that the directors of Southeast are also the directors of the subsidiaries. Under the subsidiaries' charters, when the bond debts are paid, legal title to the properties would pass to Southeast. He testified that in the event that a subsidiary defaulted on its bond debt, Southeast itself would have the opportunity to cure or foreclose, or Southeast's directors, in their capacity as directors of the subsidiary, could act to cure the default. Besides a default situation, Southeast could compel dissolution of the subsidiaries through its interlocking boards of directors. This would also cause the transfer of legal title to Southeast under the Articles of Incorporation of each subsidiary. Finally, Johnson testified that because of the interlocking boards of directors, Southeast could compel the subsidiaries to mortgage or sell the properties they owned.

Considering only the evidence and inferences that tend to support the finding, and viewing the evidence in the light most favorable to the finding, we determine that there is some probative evidence which supports the trial court's finding that upon default, title to the properties vests in Southeast. Additionally, there was probative evidence indicating that Southeast could compel the subsidiaries to dissolve themselves, thus causing legal title to vest in Southeast. Likewise, through Johnson's testimony, there was evidence that because of interlocking boards of directors, Southeast had the interest and control necessary to ensure that the indebtedness was paid, which would result in transfer of legal title to Southeast, and that Southeast could compel the subsidiaries to mortgage or sell the properties. Thus, we overrule HCAD's four legal sufficiency challenges to the trial court's findings of fact.

██ An insufficient evidence complaint asserts that the only evidence adduced on a point is factually too weak alone to support it. *Ritchey v. Crawford,*

734 S.W.2d 85, 86 n. 1 (Tex.App.—Houston [1st Dist.] 1987, no writ). A party who is attacking the factual sufficiency of an adverse finding on which the party did not have the burden of proof must show insufficient evidence to support the finding. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied). *See also* Robert W. Calvert, 'No Evidence' and 'Insufficient Evidence' Points of Error, 38 Tex. Law Rev. 359, 364–368 (1960). The court of appeals must consider and weigh all the evidence, both in favor of and against the challenged finding, and should set aside the verdict only if the evidence is so contrary to the overwhelming weight of the evidence so as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In Re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

HCAD did not produce any other witnesses to controvert Johnson's testimony. On cross, HCAD elicited testimony from Johnson pointing out that each subsidiary was a separate entity. Johnson admitted that the directors of Southeast did not technically have direct control over the activities of the subsidiaries. Johnson admitted that the directors of Southeast acted in separate capacities as directors of the subsidiaries, even though they were the same individual people. Despite this testimony, we cannot say that the findings are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Accordingly, we overrule HCAD's four points of error as to factual insufficiency.

██ This brings us to HCAD's fifth and ultimate complaint. HCAD contends that the trial court erred in rendering judgment that the properties in question were tax exempt under Tex. Loc. Gov't Code Ann. § 394.905. Conclusions of law are always reviewable. *Westech Eng. v. Clearwater Constructors,* 835 S.W.2d 190, 196 (Tex.App.—Austin, 1992, no writ). A trial court's conclusions of law are reviewed *de novo,* and will be upheld if the

judgment can be sustained on any legal theory supported by the evidence. *Nelkin v. Panzer*, 833 S.W.2d 267, 268 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). Finally, conclusions of law may not be challenged for factual insufficiency, but the court's conclusions drawn from the facts may be reviewed to determine their correctness. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *rev'd on other grounds*, 801 S.W.2d 890, 894 (Tex.1991).

Since the subsidiaries are organized under a different statute as non-profit corporations and not as housing finance corporations, it is HCAD's position that the subsidiaries are separate entities existing apart from the housing finance corporation. HCAD concludes that the properties held by the subsidiaries are therefore not subject to the tax exemption. We disagree.

The Texas Constitution gives the Legislature power "by general laws, [to] *exempt from taxation public property used for public purposes ....*" Tex. Const. art VIII § 2(emphasis added). The Legislature did exactly that by enacting § 394.905 of the Local Government Code. That section declares that "[t]he housing finance corporation, all property owned by it, the income from the property, all bonds issued by it, the income from the bonds, and the transfer of the bonds are exempt, *as public property used for public purposes,* from license fees, recording fees, and all other taxes imposed by this state or any political subdivision of this state." Tex. Loc. Gov't Code Ann. § 394.905 (Vernon 1988)(emphasis added). Moreover, in declaring that housing finance corporations and all property owned by them were public property used for public purposes, the Legislature did not require that the housing finance corporation actually acquire or hold title to a residential development, home mortgage, or any interest in the development or mortgage. *See* Tex. Loc. Gov't Code Ann. § 394.051(g)(Vernon 1988).

Additionally, the creation of subsidiary corporations is a necessary vehicle to obtain the financing the housing corporation needs to fulfill its purpose. To hold that the housing finance corporation's wholly owned subsidiaries are separately taxable while the corporation is exempt would be to defeat the legislative purpose behind the Housing Finance Corporations Act.

The issue is not one of technical individuality or autonomy, as HCAD suggests, but rather whether the properties are publicly owned. *HCAD relies on Texas Turnpike Company v. Dallas County*, 153 Tex. 474, 271 S.W.2d 400, 402–03 (1954) for the position that the property here is not exempt. HCAD argues that Southeast possesses only a contingent remainder, and a contingent remainder is not taxable title. In *Turnpike*, the Supreme Court held that property held by private turnpike corporations was not "public property" within the meaning of the constitutional provision exempting "public property" from taxation. *Id.*

By statutory directive, the Texas Turnpike Authority was authorized to accept irrevocable gifts of all assets from the private turnpike corporations which constructed turnpikes at private expense. The statute governing the Authority declared that "the equitable, beneficial and superior title to the property [of the private corporations] shall be vested at all times in the State of Texas and shall constitute public property used for public purposes...." *Id.* 271 S.W.2d at 401. However, before the Authority could accept the gift of the property, the statute required that a number of contingencies exist—the roads be free of indebtedness, no compensation be paid therefore by the state, the roads be in good condition and repair to the satisfaction of the State Highway Commission, the roads be constructed and maintained in such a manner equal or superior to standards of the State Highway Commission, and that in letting of contracts for construction and maintenance,

procedures of the State Highway Commission be followed. *Id.*

The Supreme Court stated that public ownership for tax exemption purposes is a legal status based on facts. "If the state does not in fact own taxable title to the property, neither the Legislature by statute, nor the petitioners and the Authority by contract, may make the state the owner thereof by simply saying it is the owner." *Id.* at 402. Accordingly, the State owned neither legal nor equitable title to the property. In fact, the Court stated that the State had no vested interest in the property in question because of pre-existing, unfulfilled contingencies. Moreover, if any of the possible conditions precedent failed, the State would not become the owner of the roads. "[T]he right of the state, as grantee, to acquire the deeds and the legal title is entirely dependent upon performance of conditions by the grantor." Therefore, the property in *Turnpike* was not "public property" and was not subject to exemption since the State owned no vested property interest in the Authority or the property in question in that incident.

Unlike the situation in *Turnpike,* in the case before us, the Housing Finance Corporation (Southeast) owns equitable title to the properties. Testimony showed that Southeast owned the subsidiary corporations and would receive any profits generated by the properties. Legal title will revert to Southeast upon the payment of the debt or the dissolution of the subsidiary, conditions Southeast has power to fulfill. Only in the event of default on the bonds is there a possibility that Southeast might not receive title, but in that case, Southeast has the option to cure the default, as well as the ability to foreclose on the property itself. The real and beneficial use of the property ultimately exists in the housing authority. The fact that the subsidiary corporations hold legal title does not change the fact that equitable title resides with Southeast, or that the Legislature can choose to exempt from taxation public property held by the housing authority for public use, as they chose to do so here.

Equitable title is the present right to legal title. *Carmichael v. Delta Drilling Co.,* 243 S.W.2d 458, 460 (Tex.Civ.App.—Texarkana, 1951, writ ref'd). In *TDC v. Anderson County Appraisal District,* 834 S.W.2d 130, 131 (Tex.App.—Tyler 1992, writ denied) the Tyler Court of Appeals noted that the State (a tax exempt entity) would acquire full legal title to the property in question in that case, upon payment of the full lease/purchase price of the property in question. *Id.* at 131. Once payments were complete, the State could compel delivery of the legal title. *Id.* Where a tax exempt entity holds equitable title to property, the property is tax exempt. *Id.* Just as the State would obtain legal title in *TDC v. Anderson County Appraisal District,* Southeast will obtain legal title in the instant scenario. Southeast will be able to compel the transfer either by enforcing the subsidiary corporations' own Articles of Incorporation, or by having the directors of Southeast, in their capacity as directors of the subsidiaries, dissolve the subsidiaries.

Consequently, we conclude that the trial court did not err by determining the properties in question were tax exempt. HCAD's fifth and final point of error is overruled.

The trial court's judgment is affirmed.