**Omar Santos ESCAMILLA, Appellant,**

v.

**The CITY OF LAREDO and the United Independent School District, Appellees.**

**No. 04–99–00342–CV.**

Court of Appeals of Texas, San Antonio.

Dec. 15, 1999.

Anthony C. McGettrick, Law Offices of Francisco J. Saldana, Jr., Laredo, for Appellant.

Laura L. Gomez, Ricardo De Anda, De Anda Law Firm, Laredo, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

Omar Santos Escamilla ("Escamilla") appeals the trial court's entry of judgment in favor of the City of Laredo (the "City") and United Independent School District ("UISD") in a suit to collect tax deficiencies on property owned by Escamilla (Lot 36 and Lot 37). The trial court awarded the City and UISD $62,855.87 in delinquent taxes, current taxes, penalties, interest, attorney's fees, costs, and fees. In three points of error, Escamilla asserts the trial court erred in rendering judgment in that: 1) Lot 36 cannot be additionally assessed for omitted property in 1997 under Section 25.21 of the Texas Property Tax Code after the land had been originally assessed for land and improvements for tax years 1992–96; 2) the failure of the City and UISD to include the omitted property from 1992–96 (when the property was assessed for omitted property in 1992 for the 1990–91 tax years) should bar them from using Section 25.21 to tax the improvements on the property in 1997; and 3) the manner and timing of the imposition of taxes for the omitted property violated

Escamilla's procedural rights under the Texas Property Tax Code. We affirm the trial court's entry of judgment.

## BACKGROUND

In 1990, Escamilla purchased Lot 37 in Block 2 of Tejas Industrial Park in Laredo, Webb County, Texas. He soon built a warehouse on the lot. In 1993, he purchased the land and warehouse on Lot 36, adjacent to Lot 37. For tax years 1992–96, Lot 36 had a total appraised value of $85,300 [1] and Lot 37 had a total appraised value of $76,230. Neither of these appraised values reflects the warehouses that were built on the lots prior to 1992.

In August 1996, the Chief Appraiser of Webb County conducted supplemental appraisals of both lots for tax years 1992–96, as authorized by Section 25.21 of the Texas Property Tax Code. The purpose of the supplemental appraisals was to include the value of the warehouses that were omitted from the lots' then-existing appraisals.

After the supplemental appraisals, but prior to January 10, 1997, the Webb County Appraisal District mailed two "Notice[s] of Appraised Values for Property Taxes" to Escamilla, informing him that the appraised value of Lot 36 and Lot 37 had increased (reflecting the warehouses on both lots). Lot 36's new total appraised value was $269,660; Lot 37's new total appraised value was $337,290.

On or around January 14, 1997, the Webb County Appraisal District mailed four more "Notice[s] of Appraised Values for Property Taxes" to Escamilla, advising him that the appraised value of Lot 36 had changed for 1992–95.[2] The appraised value for 1992–95 had increased in the same manner as the value had changed for the 1996 tax year. The Appraisal District

mailed him four other notices advising him of similar changes for Lot 37. Escamilla did not protest the changes in the new total appraised value of either lot.

On or around February 12, 1997, the City and UISD mailed Escamilla two supplemental tax bills. These bills were for the supplemental taxes due for the 1996 tax year on each lot. In the bills, the City and UISD informed Escamilla of the March 31, 1997 payment deadline. On or around March 12, 1997, the City and UISD mailed two more supplemental tax bills that reflected the amounts owed for the 1992–95 tax years on each lot. These bills advised Escamilla of the April 30, 1997 deadline to pay the 1992–95 supplemental taxes.

Escamilla had previously paid (on time) the pre-supplemental appraisal taxes that were due on both lots. He failed to pay the supplemental taxes for 1992–96 before the respective deadlines. The City and UISD filed suit against Escamilla for delinquent ad valorem taxes. Following a bench trial, the trial court issued findings of fact and conclusions of law. The court entered judgment, followed by a modified judgment, in favor of the City and UISD.

## DISCUSSION

### 1. Point of Error Three: Adequacy of Notice and Other Procedural Concerns

We turn first to Escamilla's third point of error because the City and UISD's compliance with the procedural requirements of the Tax Code resolves the other points of error that he raises. In his third point of error, Escamilla asserts "the manner and timing of the imposition of taxes for omitted property violated" his procedural rights under the Texas Property Tax

---

1. Lot 36's Original Appraised Value reflects a Land Market Value of $76,230 and "pre-warehouse" improvements (a dock) of $9,072 for 1992–93 and $9,070 for 1994–96. The total appraised value, before consideration of the warehouse-improvement, is $85,302 for 1992–93 and $85,300 for 1994–96. For clari-

ty, we have listed the total appraised value for the period in question as $85,300.

2. The Appraisal District mailed one notice for each tax year in which the appraised value had changed.

Code. He alleges five ways in which the City and the UISD failed to comply with the procedural requirements of the code:

a) The notices of reappraisal for omitted property for 1992–96 for both properties did not adequately inform him that they constituted appraisals for omitted property;

b) The suit for omitted property taxes was premature because the notices did not meet the requirements of Section 31.01

c) The City and UISD did not send Escamilla a delinquent tax notice that he was being billed for new and additional taxes for the five-year period for which he had already paid the taxes that were originally assessed;

d) Even if the documents were to be construed as sufficient as tax bills and as giving notice to Escamilla, the suit was filed prematurely on May 28, 1997 because the omitted property taxes were not delinquent until February 1, 1998; and

e) There was no evidence that the omitted taxes sought in this case were ever placed on the tax roll of either entity prior to their imposition on Escamilla in early 1997.

■ Among its findings of fact, the trial court stated:

[A]ll of the Notices of Appraised Values for Property Taxes ... were properly mailed to Defendant Escamilla at his proper addresses and met the requirements of Section 25.19 of the Texas Property Tax Code, including, but not limited to, properly advising said Defendant of his right to protest the change in appraised value and the deadline therefor.

[T]he warehouses at issue were omitted for tax years 1992 through 1996 from the original appraisals of Lot 36 and 37, and were properly brought onto the tax rolls for these tax years in 1997, under § 25.21 of the Texas Property Tax Code....

. . . .

[O]n or about February 12, 1997, Plaintiffs mailed to Defendant Escamilla supplemental tax bills for the 1996 tax year that met the requirements of §§ 26.15 and 31.01 of the Texas Property Tax Code, advising said Defendant of the supplemental ad valorem taxes due and of the March 31, 1997 deadline to pay same.

[O]n or about March 12, 1997, Plaintiffs mailed to Defendant Escamilla supplemental tax bills for the 1992 through 1995 tax years that met the requirements of §§ 26.15 and 31.01 of the Texas Property Tax Code, advising said Defendant of the supplemental ad valorem taxes due and of the April 30, 1997 deadline to pay same.

. . . .

[T]he supplemental taxes at issue for 1996 became delinquent on April 1, 1997, and the supplemental taxes for 1992 through 1995 became delinquent on May 1, 1997.

Although the findings of fact are not conclusive when the reporter's record is complete, the trial court's findings may be reviewed for their factual and legal sufficiency. *See Harris County Appraisal Dist. v. Southeast Tex. Hous. Fin. Corp.,* 991 S.W.2d 18, 20 (Tex.App.-Amarillo 1998, no pet.). In challenging the legal sufficiency of the evidence, Escamilla must show that there is no evidence to support the finding against him. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). We consider the evidence in the light most favorable to the finding in order to determine if there is any evidence or inference that supports the trial court's finding. *See Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing the findings for their factual sufficiency, this court should consider and weigh the evidence, and set aside the trial court's findings "only if the evidence is so contrary to the overwhelming weight of the evidence so as to be clearly wrong and

unjust." *Southeast Tex. Hous. Fin. Corp.*, 991 S.W.2d at 21 (citations omitted).

### a. Notices of Reappraisal: Adequate Information of Appraisal for Omitted Property

■ Escamilla contends that the notices of reappraisal for omitted property for 1992–96 as to each of the two properties did not adequately inform him that they constituted appraisals for omitted property.

Section 25.23(c) states: "As soon as practicable after determining the appraised value of a property listed in supplemental appraisal records, the chief appraiser shall deliver the notice required by Section 25.19...." TEX. TAX CODE ANN. § 25.23 (Vernon 1992). Section 25.19 lists the requirements for preparing the written notice to the property owner when the appraised value is greater than it was in the preceding year. *See id.* § 25.19 (Vernon 1992 & Supp.1999).

In examining the notices of reappraisal for Lots 36 and 37 for the 1992–96 period, both forms conform to the requirements of Section 25.19. The 1992–94 forms contain the following statement: "Reason: Omitted from Tax Rolls for Improvement." We note that the Tax Code does not require the appraisal form to state the reason for a change in appraised value. Even though Escamilla complains that the notices *do not give him direct notice of the* change in the properties' value, there are obvious differences between the "taxes levied" (which he already paid) and the "estimated taxes" (which correspond to the increased taxable values on the property), as well as the *dramatic increase in his* property value compared with previous notices that he had received.

Equity undermines Escamilla's position, at least as to Lot 37. Shortly after purchasing Lot 37, Escamilla built a warehouse upon the lot. The appraisal notices and corresponding tax bills that he continued to receive after erecting a large improvement *did not change.* It is common knowledge that there are ad valorem tax consequences that are almost certain to result from greatly increasing the value of property with valuable improvements.

### b. Requirements of Section 31.01

■ Escamilla asserts that the City and UISD failed to prepare tax bills for the omitted properties for both lots sufficient to meet the requirements of Section 31.01, causing the suit for omitted property taxes to be premature.

As Escamilla points out, Section 26.15 requires the assessor to mail a supplemental tax bill in accordance with Chapter 31 of the Property Tax Code (including "a brief explanation of the reason for and effect of the *supplemental bill*"). TEX. TAX CODE ANN. § 26.15 (Vernon 1992) (emphasis added); *see id.* § 31.01 (Vernon 1992 & Supp.1999). The letters accompanying the tax bills explained to Escamilla that the corrected tax bills stemmed from "omitted property;" the accompanying letters also reference a particular cause number that indicates a "correction order." Based on an examination of the tax bills, the City and UISD complied with the requirements of Section 31.01.

### c. Notice of Delinquent Tax

■ Escamilla further argues that the City and UISD did not send him a delinquent tax notice that he was being billed for new and additional taxes for the five-year period for which he had already paid the taxes originally assessed.

As the City and UISD point out, the City's tax collector testified at trial that she sends the City's annual delinquency notices in May. Escamilla did not introduce contrary evidence. In fact, he stated, "Normally, everything that I get concerning taxes, I don't even open it, I turn it [over] to the accounting department."

Section 33.47(a) addresses evidentiary concerns in delinquent tax cases:

> In a suit to collect a delinquent tax, the taxing unit's current tax roll and delinquent tax roll or certified copies of the

entries showing the property and the amount of the tax imposed constitute prima facie evidence that each person charged with a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property listed is the correct amount.

Tex. Tax Code § 33.47(a) (Vernon 1992).

The record contains certified copies of the tax statements that show the delinquent nature of Escamilla's property. After the City and UISD made their prima facie case by introducing the official tax records (and proof of nonpayment), Escamilla had the burden "to go forward with [his] defensive evidence." *David Graham Hall Found. v. Highland Park Indep. Sch. Dist.*, 371 S.W.2d 762, 764 (Tex.Civ.App.-Dallas 1963, writ ref'd n.r.e.). Escamilla did not introduce evidence in support of his proposition that the notices had not been sent.

#### d. Timing of Suit

■ Escamilla also contends that even if the documents were to be construed as sufficient as tax bills and as giving notice to him, the suit (commenced on May 28, 1997) was filed prematurely because the taxes, which were being imposed in 1997 for omitted properties, were not delinquent until February 1, 1998.

The City and UISD imposed the taxes in question on each January 1 of the respective tax years. They became delinquent when Escamilla did not pay them before February 1 of the following *year in question.* Cf. *Jackson Hotel Corp. v. Wichita County Appraisal Dist.*, 980 S.W.2d 879, 880 (Tex.App.-Fort Worth 1998, no pet.). Because the taxes were billed to Escamilla under the omitted property provision of the tax code, Section 26.15(e) applies and confers a 21–day grace period before the new taxes become delinquent. *See* Tex. Tax Code § 26.15(d) (Vernon 1992).

For the 1996 tax year, the City and UISD mailed the supplemental tax bills on February 12, 1997; the approximate delinquency date for omitted property taxes could have been no earlier than March 5, 1997. The due date set by the City and UISD was March 31, 1997. For the 1992–95 tax years, the taxing entities mailed the supplemental tax bills on March 12, 1997; the approximate delinquency date for these omitted property taxes could have been no earlier than April 2, 1997, which was also the due date set by the taxing entities. Following Escamilla's failure to pay his then-delinquent taxes, the City filed suit on May 28, 1997. The suit was properly commenced when the taxes were delinquent following the 21–day grace period.

#### e. Tax Roll

■ Escamilla asserts that there was no evidence that the omitted taxes sought in this case were ever placed on the tax roll of either the City and UISD prior to imposing the taxes on Escamilla in early 1997.

By introducing certified copies of the tax statements on Escamilla's property, the City and UISD have made the prima facie case against Escamilla that taxes on his properties were delinquent; these statements show that the taxing entities have "complied with all requirements of law" in assessing the taxes as delinquent. *See* Tex. Tax Code § 33.47(a) (Vernon 1992). There is no evidence in the record that supports the proposition that the taxes were not placed on the tax roll. The certified copies of the tax statements are persuasive: Escamilla was delinquent in his payment of taxes for properties that were properly placed on the respective tax rolls.

We overrule Escamilla's third point of error.

### 2. Points of Error One & Two: Administrative Remedies Required

■ Having concluded that the Webb County Appraisal District complied with the Property Tax Code in furnishing sup-

plemental appraisals to Escamilla, we turn to the proper steps that are required to protest changes in appraised value. Escamilla admitted at trial that he did not protest the supplemental appraisals to the Webb County Appraisal District. The City and UISD argue that Escamilla's first two points of error should be overruled because he did not exhaust his remedies with the Webb County Appraisal District (the agency level) prior to trial. Escamilla was entitled to protest the appraised value of Lots 36 and 37 before the Webb County Appraisal Review Board. *See* TEX. TAX CODE ANN. § 41.41 (Vernon Supp.1999). Under the Tax Code, Escamilla's deadline to file his notice of protest was thirty days after he received the notice of the change in appraisal. *See id.* § 41.44(a) (Vernon 1992). These remedies are exclusive, and Escamilla's failure to pursue them precludes judicial review of the appraisal. *See id.* § 42.09; *see also Northwest Tex. Conference v. Happy Indep. Sch. Dist.*, 839 S.W.2d 140, 142 (Tex.App.-Amarillo 1992, no writ) (stating that "[f]ailure to exhaust those avenues results in a *deprivation of the right to raise a defense* against a suit to enforce collection of delinquent taxes") (emphasis added).

We overrule Escamilla's first and second points of error.

### CONCLUSION

We affirm the trial court's entry of judgment.