ACCEPTED
03-13-00463-CV
6433628
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/10/2015 4:59:24 PM
JEFFREY D. KYLE
CLERK

## No. 03-13-00463-CV

In The Court Of Appeals
For The Third Court Of Appeals District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

8/10/2015 4:59:24 PM

JEFFREY D. KYLE
Clerk

## AETC II PRIVATIZED HOUSING, LLC

*Appellant,*

v.

## TOM GREEN COUNTY APPRAISAL DISTRICT

*Appellee.*

ON APPEAL FROM THE 391ST DISTRICT COURT, TOM GREEN COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-10-0377-C

## APPELLANT'S MOTION FOR REHEARING AND FOR RECONSIDERATION EN BANC

RYAN LAW FIRM, LLP
John Brusniak
Texas Bar No. 03261500
john.brusniak@ryanlawllp.com
Tracy Turner
Texas Bar No. 24076743
tracy.turner@ryanlawllp.com
100 Congress Avenue, Suite 950
Austin, Texas 78701
Telephone: (512) 459-6600
Facsimile: (512) 459-6601

August 10, 2015                    Attorneys for Appellant

## ISSUES PRESENTED FOR REVIEW

For purposes of property taxation, ownership, is viewed substantively, not technically and narrowly. Further, in enacting the statute at issue here, it was the intent of the United States Congress to create military housing for its own use, regardless of the manner in which it was achieved. The Court failed to take these matters into account, and issued an opinion in direct conflict with its sister courts. A rehearing and reconsideration en banc should be granted. The Court's opinion erroneously authorizes the State of Texas to tax the United States on its military housing.

## ARGUMENT

The Court, in its opinion, fails to acknowledge that the United States is operating the military housing, at issue, under the financing authority granted to it in subchapter IV, 10 U.S.C. §§ 2871-2885, not AETC.

Under the Supremacy Clause of the United States Constitution, the laws of the United States are "the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Taxing the United States offends federal supremacy. The Court's opinion violates the Supremacy Clause by allowing the State of Texas to tax property owned by the United States. Providing housing to federal military personnel, is an obligation of the United States government.

## I. FEDERAL LAW GRANTS THE SECRETARIES OF THE ARMED FORCES BROAD AUTHORITY TO FUND MILITARY HOUSING PROJECTS.

10 U.S.C. §§ 2871-2885, was enacted in 1996 to address the critical shortfall in military housing, which was causing low retention rates amongst the armed forces. It provides the secretaries of the armed forces, various means, to expeditiously cure the problem. Pub. L. No. 104-106, 110 Stat. 186 (codified at 10 U.S.C. §§ 2871-2885 (2003)). This Court overlooked the broad discretion, granted by Congress, and focused narrowly on the means by which it was achieved.

10 U.S.C. §§ 2872, specifically states:

> **Title 10. Armed Forces**
> **Subtitle A. General Military Law**
> **Part IV. Service, Supply, and Procurement**
> **Chapter 169. Military Construction and Military Family Housing**
> **Subchapter IV. Alternative Authority for Acquisition and Improvement of Military Housing.[1]**
>
> In addition to any other authority provided under this chapter for the acquisition or construction of military family housing or military unaccompanied housing, the Secretary concerned may exercise any authority or any combination of authorities provided under this

---

[1] When reading a statute, it is important to look at the placement of the statute within a code. See *Martinez v. Dallas Cent. Appraisal Dist.,* 339 S.W.3d 184, 192 (Tex.App.-Dallas 2011, no pet.)(The Court determined that section 23.23 of the tax code is not an exemption because it is was not found in the exemption section of the tax code. Had the legislature intended for section 23.23 to be an exemption, it would have included it in the exemption section of the Tax Code). The same applies here. This provision is in the part of the United States Code dealing with the Armed Forces and how military housing is to be constructed. The legislature specifically created a subsection within the military housing chapter authorizing alternative means for the acquisition or improvement of military housing, all of which is under Subtitle A, General Military Law.

subchapter in order to provide for the acquisition or construction by eligible entities of the following:

  (1) Family housing units on or near military installations within the United States and its territories and possessions.

  (2) Military unaccompanied housing units on or near such military installations.

This statute, along with the rest of Subchapter IV, came about as a result of the deterioration of military housing that had been constructed in the 1940's and 1950's.[2] The Military Housing Privatization Initiative ("MHPI") was created to give the secretaries of the armed forces a range of tools in solving the problems of housing for military personnel and their families. *See* National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, 110 Stat. 186, Title XXVIII A, Military Housing Privatization Initiative, as amended and codified at 10 U.S.C. §§ 2871-2885. Under the MHPI, the federal government is able to expedite new construction. One of the ways to do so is by entering into agreements with private companies who supply capital in exchange for a steady stream of military tenants and reliable monthly payments.

In the process of enacting the legislation, the Armed Services Committee, supported by the Secretary of Defense, recommended that the military be able to use

---

[2] "The committee recognizes that living conditions for single military service members and military families are in many cases inadequate. Many of these housing units and quarters are over 30 years old and have received minimal funding for maintenance, repair, or modernization. The Department of Defense has found almost 60 percent of these units to be substandard. The committee is concerned that these housing conditions may result in low retention rates for the military services, and believes that adequate housing is an integral part of the overall readiness of the Armed Forces." National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, 110 Stat. 186, Title XXVIII A, Military Housing Privatization Initiative, as amended and codified at 10 U.S.C. §§ 2871-2885.

private sector financing for construction and revitalization projects. 10 U.S.C. § 2811; Pub. L. No. 104-106, 110 Stat. 186; S. REP. 104-112, 104th Cong., 1st Sess. 1195, WL 419056 (Leg.Hist)[3].

The United States, following the authority granted to it in 10 U.S.C. §§ 2871-2885, entered into an agreement with two private companies, and formed AETC II Privatized Housing, LLC (hereinafter "AETC") in July 2007. Through AETC, the United States constructed military housing in Tom Green County, for military personnel at Goodfellow Air Force Base, on Tract G, which is wholly owned by the United States.[4] AETC provided the financial means for the United States to build military housing for its personnel. Simply put, the United States was using a private company to fund the project. The sole purpose of AETC was to construct, and operate, military housing in conjunction with the United States.

In order to assure that the property could not be used for any other purpose, the United States, pursuant to 10 U.S.C. §§ 2871-2885, placed many operational restrictions upon AETC. If AETC were to violate any of the restrictions, the United States could regain title to the property. The property is used, and can only be used, as military housing. At the end of the lease term, AETC is instructed to either, remove all

---

[3] National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, 110 Stat. 186, Title XXVIII A, Military Housing Privatization Initiative, as amended and codified at 10 U.S.C. §§ 2871-2885.

[4] Tract G is exempted from property taxation by Appellee.

of the improvements and restore the land at no expense to the government, or transfer title to the United States. AETC, is in no way, able to sell the property, or use the property for another means. Along with these restrictions, the United States controls and restricts the use of the property. Specifically, the Unites States restricts AETC's: (1) access to the property, (2) the construction and leasing of the property, (3) business which may be conducted on the property, and (4) naming the property.

The Court's opinion fails to address, and consider, Congress's intent for in enacting the MHPI. 10 U.S.C. §§ 2871-2885. The initiative allowed the United States to become a 49% interest owner in AETC, and to act in the manner that it did, to wit, use AETC to fund the construction of military housing in Tom Green County. The Texas Supreme Court has specifically acknowledged:

> "The District argues that since taxation ordinarily falls only on legal ownership, exemptions should benefit only legal owners. While the argument has the virtue of symmetry the Legislature is not so constrained in authorizing tax exemptions. The District also argues that entities that are separate for purposes of imposing tax liability should not be treated as one for purposes of qualifying for tax exemptions. But federal law disregards the separate identity of some entities, as it does with Atlantic and the Arbors, and there is no reason why Section 11.182 should do the same."

*AHF-Arbors at Huntsville I*, 410 S.W.3d at 838.

## II. THE COURT FAILED TO ACKNOWLEDGE THAT EQUITABLE TITLE IS HELD BY THE UNITED STATES

The Court's opinion is in direct conflict with its sister court as well as opinions issued by the Texas Supreme Court and other appellate courts. Appraisal districts

throughout the state, like this Appellee, have argued that transactions need to be viewed narrowly, and not as a whole. This is not the law of the state.

In *Texas Department of Corrections v. Anderson County Appraisal District,* 834 S.W.2d 130 (Tex. App. - Tyler 1992, writ denied), the Tyler Court of Appeals decided a similar case. At that time, a demand for prison space exceeded the number of prisons in the state of Texas. The Texas Department of Corrections (hereinafter "TDC") needed a new prison. The state lacked adequate financing so the TDC devised a plan that would "avoid the appearance of creating debt". *Id* at 130. TDC entered into a lease agreement with a corporation. The corporation agreed to lease the state's land and build the prison. TDC also signed an agreement with the corporation to lease back the prison once it was complete. Thereafter, the corporation assigned all its leases, agreements and the construction contract to MBank Dallas, as Trustee. MBank honored the agreement and the prison was opened in August 1987.

The appraisal district determined the prison was taxable because the title was held by a private entity, MBank. However, the Tyler Court of Appeals held that "while it is true that the Trustee has legal title, the burden of taxation is placed on the equitable title which is held by the state". *Id* at 131. The Court further stated that "the improvements, in equity, are owned by the state 'no different[ly] from that of any private owner who holds property against which there is an outstanding lien.'" *Id* at 131. TDC would acquire legal title once all the lease payments were made. The Court held that until that event, the State had equitable title because it could compel the delivery

of legal title to the facility. *Id.* at 131. In reality, the "lease" was a financing method to make it appear that the state was not incurring debt.

As in *Texas Department of Corrections*, AETC provided the financial means, and construction, for the United States to achieve the governmental purpose of creating housing for its military personnel. In reviewing this opinion, the Court needs to look at the substance of the transaction and the United States' control of the property. As in *Texas Department of Corrections*, the property will revert back to the United States at the end of the lease. More significantly, should the property be used for anything other than military housing, or if AETC otherwise violates the lease terms, the United States has the right to immediately regain title. The military housing sits on Tract G, which is wholly owned by the United States. There is no provision in the lease for AETC to ever acquire the federal government's interest in Tract or in the project itself. This constitutes equitable title for purposes of property tax law and makes the United States the owner of the property.

Numerous other cases address the issue of equitable title. They come to the same conclusion- an equitable title holder is the owner of the property for purposes of property taxation. In each of these cases, the courts looked at the substance of the transactions and disregarded the form. By not considering these cases, the opinion is in direct conflict with these Courts.

- *Harris County Appraisal Dist. v. Southeast Texas Housing Finance Corp.,* 991 S.W. 2d 18 (Tex. App. - Amarillo 1998, no writ) (property exempt where subsidiary held legal title, because state agency owned and

controlled subsidiary, received any profits from operation of property, and could force conveyance of legal title to property at any time; under these facts state held equitable title to property- governmental purpose was to provide housing for low income, and elderly persons);

- *Orange County Appraisal Dist. v. Agape Neighborhood Improvement, Inc.* 57 S.W. 3d 597 (Tex. App. - Beaumont 2001, no writ)(property exempt where legal title held by wholly-owned subordinate unit of CHDO; parent CHDO considered to equitable owner for exemption purposes- governmental purpose was to provide housing for low income individuals);

- *Travis Central Appraisal Dist. v. Signature Flight Support Corp.* 140 S.W. 3d 833 (Tex. App - Austin 2001, no writ)(observing that a person holding equitable title to property may be the owner for taxation purposes; equitable title is defined as the present right to compel legal title- governmental purpose was to construct facilities for a full service fixed-based operation for general aviation at Austin-Bergstrom International Airport);

- *Sweetwater Indep. Sch. Dist. v. ReCor, Inc.,* 955 S.W.2d 703 (Tex. App Eastland 1997, pet. denied)(equitable title existed in juvenile detention center; no taxes were due - governmental purpose was to open a new juvenile detention center).

- *AHF-Arbors at Huntsville I, LLC* v. *Walker Cnty. Appraisal Dist.*, 410 S.W.3d 831 (Tex. 2012)(legal title is not required to qualify for an exemption; equitable title constitutes sufficient ownership- governmental purpose was to provide housing to low income individuals);

- *Galveston Cent. Appraisal Dist.* v. *TRQ Captain's Landing*, 423 S.W.3d 374 (Tex. 2014)(equitable ownership interest is sufficient to support an entity's claim of property ownership for purposes of a tax exemption- governmental purpose was to provide housing to low income individuals).

## CONCLUSION

In reviewing the Appellant's briefing, the Court disregarded the Tyler Court of

Appeals decision in *Texas Department of Corrections*, and multiple other appellate cases,

incorrectly applied the Texas Supreme Court cases to the facts of this case, and issued its opinion in direct conflict with case law. In reaching its decision, the Court did not take into consideration the authority the United States has, to enter into agreement with private companies to achieve a governmental purpose. 10 U.S.C. §§ 2871-2885. The Court should have looked at the entirety of the transaction between the United States and AETC, and not in a technical, procedural sense.

As shown above, the United States, through AETC, built military housing in Tom Green County pursuant to 10 U.S.C. §§ 2871-2885. The United States holds equitable title to the property, as defined by numerous Texas Courts. Had the Court followed the rulings and analysis of the other appellate courts and Texas Supreme Court, it would have reached a different conclusion. From the facts presented to the Court, the only conclusion that should have been reached is that, the United States is not subject to taxation on the military housing located in Tom Green County.

## PRAYER

Appellant, AETC II Privatized Housing, LLC, respectfully prays that the Court grant this Motion for Rehearing and Motion for Reconsideration En Banc.

Respectfully submitted,

＿/s/ Doug Sigel＿＿＿＿＿

John Brusniak
Texas Bar No. 03261500
john.brusniak@ryanlawllp.com
Doug Sigel
Texas Bar No. 18347650
doug.sigel@ryanlawllp.com
Tracy Turner
Texas Bar No. 24076743
tracy.turner@ryanlawllp.com
RYAN LAW FIRM, LLP
100 Congress Avenue, Suite 950
Austin, Texas 78701
Telephone: (512) 459-6600
Facsimile: (512) 459-6601

Attorneys For Appellant
AETC II Privatized Housing, LLC

## Certificate of Compliance

This computer-generated document created in Microsoft Word complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 2495 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).  In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

＿/s/ Doug Sigel＿＿＿＿＿

Doug Sigel

## Certificate of Service

I certify that a copy of the foregoing Motion for Rehearing and Motion for Reconsideration En Banc was served on Defendant, Tom Green County Appraisal District, through counsel of record, James Robert Evans, Jr., Hargrove & Evans, LLP, 4425 Mopac South, Building 3, Suite 400, Austin, Texas 78735, jim@hellplaw.com, by electronic service through Efile.TXcourts.gov on August 10, 2015.

    /s/ Doug Sigel
Doug Sigel