**TRQ CAPTAIN'S LANDING L.P., A Texas Limited Partnership and American Housing Foundation, A Texas Non–Profit Corporation, Appellants,**

v.

**GALVESTON CENTRAL APPRAISAL DISTRICT, Appellee.**

No. 01–05–00496–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 5, 2006.

Rehearing En Banc Overruled Nov. 21, 2006.

Andrew Little, Christopher L. Jensen, John Ben Blanchard, Sprouse Shrader Smith P.C., Amarillo, for Appellant.

Ian R. Beliveaux, Anthony P. Brown, McLeod, Alexander, Powel & Apffel, P.C., Galveston, for Appellee.

Panel consists of Justices KEYES, ALCALA, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellants, TRQ Captain's Landing, L.P. ("TRQ") and American Housing Foundation ("AHF"), appeal from an order granting summary judgment in favor of appellee, Galveston Central Appraisal District ("Appraisal District"). As a result of the summary judgment entered against them, appellants were unable to claim an exemption from ad valorem taxes[1] they sought for 2003 pursuant to section 11.182(b) of the Texas Tax Code. *See* TEX. TAX CODE ANN. § 11.182(b) (Vernon 2001). In two issues on appeal, appellants contend that they were improperly denied the exemption because (1) section 11.182(b) extends to equitable owners of qualified property and (2) their application for the exemption was timely filed pursuant to an exception contained within section 11.436 of the Texas Tax Code. *See id.* § 11.436 (Vernon Supp.2005).

We reverse and render judgment.

## BACKGROUND

This dispute centers around the Captain's Landing Apartments ("apartments"), an apartment complex located in Galveston. The apartments were constructed in the 1980s, and, in 1998, they were purchased by TRQ, who acquired them by special warranty deed from WHUD Real Estate, L.P. ("WHUD"). In December, 2003, AHF obtained ownership and control of TRQ. AHF's acquisition of TRQ had the following structure and tax consequences:

1. TRQ is a Texas limited partnership. Any tax on TRQ's income flows through to its partners under federal taxation principles.[2]

---

**1.** An "ad valorem" tax is a tax on property at a certain rate based on the property's value. *Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 387 (Tex.2002). Obligations to pay, as well as exemptions from, ad valorem taxes are derived entirely from constitutional and statutory provisions. *See City of Houston*

*v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 311 (Tex.App.—Houston [1st Dist.] 2001, pet. denied).

**2.** *See* 26 U.S.C. § 701 *et seq.*; TREAS. REG. § 301.7701–3(b). Under these provisions, the partners of a partnership are not taxed on the income they produce; the partners are liable for income generated by the partnership.

2. AHF formed CD Captain's Landing, LLC ("CD") and became its sole member. Thus, CD is wholly owned by AHF.

3. CD purchased TRQ and obtained a 100% membership interest in TRQ's sole general partner, TRQ Galveston, LLC.

4. CD's purchase of TRQ was structured such that CD possessed a 99% limited partnership interest in TRQ. The remaining one percent interest in TRQ was held by TRQ Galveston, LLC, TRQ's general partner in which CD possessed a 100% membership interest.

In sum, following the relevant December 2003 transactions, AHF possessed a 100% interest in CD, TRQ's limited partner; CD owned 99% of TRQ and 100% of TRQ Galveston, LLC; TRQ Galveston, the general partner of TRQ, owned the remaining 1% interest in TRQ; and, at all times, TRQ, through the special warranty deed it acquired from WHUD, continued to hold legal title to the apartments.

The transactions described above were completed on December 30, 2003. That same day, CD filed an application with the Appraisal District seeking a 2003 ad valorem tax exemption for the apartments pursuant to section 11.182 of the Texas Tax Code. *See* TEX. TAX CODE ANN. § 11.182. Section 11.182 allows an organization qualifying as a Community Housing Development Organization[3] ("CHDO") to claim an exemption from ad valorem taxes that would otherwise be assessed against real property owned by the organization. *See id.* The pertinent provision for this dispute is subsection (b), which provides that:

(b) An organization is entitled to an exemption from taxation of improved or unimproved real property it owns if the organization:

(1) is organized as a community housing development organization;

(2) meets the requirements of a charitable organization provided by Sections 11.18(e) and (f);[4]

(3) owns the property for the purposes of building or repairing housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family; and

(4) engages exclusively in the building, repair, and sale or rental of housing as described in Subdivision (3) and related activities.

*See id.* § 11.182(b).

AHF, as the attachments demonstrate, is a CHDO, and it is therefore eligible under section 11.182(b) for ad valorem exemptions on property it owns. CD,

---

3. For the purposes of section 11.182, a CHDO "has the meaning assigned by 42 U.S.C. Section 12704." TEX. TAX CODE ANN. § 11.182(a)(2). Section 12704 of Title 42 of the United States Code defines a CHDO as, *inter alia:* (1) a non-profit organization organized under state or local laws; (2) whose purpose is to provide affordable housing to low-income and moderate income persons; and (3) who "maintains, through significant representation on the organization's governing board and otherwise, accountability to low-income community residents." *See* 42 U.S.C. § 12704 (2000).

4. Subsections (e) and (f) of section 11.18 of the Texas Tax Code provide, *inter alia*, that a charitable organization (1) may not accrue distributable profits or pay salaries exceeding a reasonable allowance for services rendered; (2) must use its assets to perform charitable functions; and (3) must adopt a bylaw or regulation mandating that upon dissolution, the organization's assets are to be transferred to the State or a qualified charitable organization. *See* TEX. TAX. CODE ANN. § 11.18(e)-(f).

against whom the taxes were assessed, is not a CHDO, nor is either AHF or CD the holder of legal title to the apartments (as noted, legal title remains in TRQ's name). Recognizing this, CD's application for the exemption included attachments indicating that CD was the sole limited partner in TRQ and held a 100% membership interest in TRQ's general partner, TRQ Galveston, and that AHF possessed a 100% membership interest in CD. Thus, CD's application effectively asserted that because (1) AHF would be entitled to an exemption for the apartments if it held legal title to them and (2) AHF owned a full interest in CD, the taxpayer, (3) which owned a full interest in TRQ, the holder of legal title to the apartments, (4) CD was entitled to the exemption. In essence, then, the application contended that the exemption should be imputed through the partnership chain and back to AHF.

On April 5, 2004, the Appraisal District denied CD's application for an exemption. The Appraisal District's letter of denial stated that CD's application had been rejected because the "applicant does not own the property." On April 19, 2004, appellants filed a notice of protest with the Appraisal District challenging its decision to deny the application. The Appraisal District, after a hearing, denied appellant's protest on July 6, 2004. Appellants then brought suit in district court seeking judicial review of the Appraisal District's denial of their application. Appellants' original petition asserted that the Appraisal District erred in concluding that AHF did not own the apartments, and it sought a declaratory judgment delineating appellants' rights under section 11.182 of the Texas Tax Code.[5]

The Appraisal District moved for summary judgment in October 2004, contending that it was entitled to judgment as a matter of law because (1) CD was not a CHDO and did not own the apartments and (2) CD's application for the exemption was not timely filed. Appellants filed an amended cross-motion for partial summary judgment in February 2005. Appellant's cross-motion asked the trial court to enter judgment finding (1) that the exemption application was timely filed pursuant to Texas Tax Code 11.436 [6] and (2) that AHF was the owner of the apartments for the purposes of section 11.182. *See id.* § 11.182. In April 2005, the trial court granted the Appraisal District's motion for summary judgment and denied appellant's cross-motion for partial summary judgment. This appeal followed.

## DISCUSSION

Appellants present two issues on appeal: (1) whether equitable owners of property may obtain ad valorem tax exemptions pursuant to section 11.182(b) of the Texas Tax Code and (2) whether section 11.436 of the Texas Tax Code provides an exception extending the filing deadline for organizations which acquire property that qualifies for a section 11.182 exemption to file an application for the exemption.

### *Standard of Review*

1. *Summary Judgment*

Summary judgment is a question of law. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003). Thus, we review a trial court's summary judgment decisions de novo. *Id.* at 215. The standard of review for a traditional summary judgment motion is threefold: (1) the movant must show that there is no

---

**5.** Appellants sought declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003 (Vernon 1997).

**6.** *See* TEX. TAX. CODE ANN. § 11.436.

genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. TEX. R. CIV. P. 166a(c); *Pustejovsky v. Rapid–Am. Corp.*, 35 S.W.3d 643, 645—46 (Tex.2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548—49 (Tex. 1985). A defendant seeking summary judgment must as a matter of law negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *Missouri Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex.App.—Austin 2002, pet. dism'd). If a trial court's order granting summary judgment does not specify the basis for the court's ruling, as is the case here, the summary judgment will be affirmed if any of the theories advanced by the movant is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

■ When both sides move for summary judgment and the trial court grants one motion but denies the other, we review all of the evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). However, "[b]efore an appellate court may reverse summary judgment for one party and render judgment for the other party, all parties must have sought final judgment relief in their cross-motions for summary judgment." *Montgomery v. Blue Cross & Blue Shield of Texas, Inc.*, 923 S.W.2d 147, 152 (Tex.App.—Austin 1996, writ denied).

## 2. *Statutory Interpretation*

■ Resolving the issues on appeal requires interpreting sections 11.436 and 11.182 of the Texas Tax Code. Statutory interpretation is a question of law. *In re Canales*, 52 S.W.3d 698, 701 (Tex.2001). Our primary goal is to ascertain and effectuate the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999). In doing so, we begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865—66 (Tex.1999). In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001). We may also consider, among other things, whether or not the statute is ambiguous, the statute's objectives, the circumstances under which the statute was enacted, legislative history, common law, former law, similar provisions, and the consequences of the statutory construction. *See* TEX. GOV'T CODE ANN. § 311.023(1)-(5) (Vernon 2005). A court of appeals should presume the legislature intended a just and reasonable result in enacting a statute. *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 287 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). An appellate court should not construe a statute in a manner that will lead to a foolish or absurd result when another alternative is available. *University of Tex. Southwestern Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 356 n. 20 (Tex. 2004) (quotations omitted). In addition, statutes conferring tax exemptions are to be strictly construed in favor of the taxing authority. *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex.1991).

***Whether an Equitable Title Holder May Claim a Tax Exemption Pursuant to Section 11.182(b)***

In their first issue on appeal, appellants contend the Texas Tax Code allows an equitable owner to claim the exemptions provided by section 11.182(b) of the Texas Tax Code. Flowing from this contention, appellants aver that (1) AHF equitably owns the apartments through its 100% membership interest in CD; (2) AHF meets the requirements of section 11.182(b); and, therefore, (3) the trial court erred by upholding the Appraisal District's denial of CD's application for an exemption. The Appraisal District, conversely, argues that the exemption may only be claimed when an organization holds legal title to the property for which the exemption is sought. According to the Appraisal District, (1) TRQ is the record owner of the apartments and is vested with legal title, and, therefore, (2) CD's application was properly denied.

■ Typically, ad valorem tax liabilities fall on the entity holding legal title to a given property. *See Childress County v. State*, 127 Tex. 343, 92 S.W.2d 1011, 1015 (1936) (holding that the holder of legal title is owner of property for taxation purposes). Texas courts, however, recognize that, in certain instances, an entity "holding equitable title to the property may be the owner for taxation purposes." *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 840 (Tex. App.—Austin 2004, no pet.); *see Orange County Appraisal Dist. v. Agape Neighborhood Improvement, Inc.*, 57 S.W.3d 597, 602 (Tex.App.—Beaumont 2001, pet. denied) (holding that subordinate unit of qualified CHDO may be considered CHDO for tax purposes when subordinate unit owns and operates property for reasons and purposes that are consistent with the applicable eligibility requirements established for CHDOs).

■ An entity holds equitable title when it possesses "the present right to [compel] legal title." *Harris County Appraisal Dist. v. Southeast Texas Hous. Fin. Corp.*, 991 S.W.2d 18, 23 (Tex.App.—Amarillo 1998, no pet.); *see also Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497–98 (Tex. App.—Dallas 2001, pet. denied). The right to compel legal title arises, for instance, under the following circumstances: (1) parent company A holds a full ownership interest in its subsidiary B; (2) B holds legal title to certain real property; (3) upon dissolution of B, legal title to its real property will revert to A; and (4) A has the power to dissolve B at anytime. *Southeast Tex. Hous. Fin.*, 991 S.W.2d at 21–23. Significantly, "where a tax exempt entity holds equitable title to property, the property is tax exempt." *Id.* at 23.

■ Here, summary judgment evidence shows that AHF holds equitable title to the apartments. According to CD's articles of organization: (1) AHF is CD's sole member; (2) the members of CD can vote to dissolve CD at anytime; and (3) upon dissolution, CD's assets shall revert to its members, namely, to AHF. Moreover, the boards of AHF and CD are comprised of the same directors. According to TRQ's partnership agreement, its partners comprise CD, which holds a 99% limited partnership interest in TRQ, and TRQ Galveston, which holds a 1% general partnership interest in TRQ. TRQ Galveston's partnership agreement lists CD as its sole partner. In the case of dissolution, TRQ and TRQ Galveston's assets revert to their respective members, namely to CD, which in turn can be dissolved at any time by AHF, with the result that CD's assets revert to AHF. Thus, reversion of legal title for the apartments can be effectively compelled from TRQ to AHF at AHF's behest. As a result, we conclude that

AHF has the present right to compel legal title to the apartments and thus holds equitable title to them.

 We next consider whether section 11.182(b) allows equitable title holders to claim the exemption from ad valorem taxes it provides.

A plain reading of section 11.182 indicates that its purpose is to encourage the availability of affordable housing for low-income and moderate-income Texans by exempting qualified CHDOs from ad valorem taxes on certain properties they own. *See* TEX. TAX CODE ANN. § 11.182. To ensure that the granting of such exemptions does not exert a deleterious effect on the tax revenue available to communities for social programs, the statute provides that an organization may not receive an exemption on a given property in the subsequent tax year unless it spent at "at least 40 percent of the total amount of taxes that would have been imposed on the property ... on social, educational, economic development services, capital improvement projects, or rent reduction." TEX. TAX CODE ANN. § 11.182(d). Thus, the statute uses ad valorem tax exemptions as an incentive to encourage qualified organizations to invest in housing development for low-income persons while requiring those organizations to reinvest a portion of their tax savings in social welfare programs.

The record before us indicates that AHF is a CHDO whose sole business purpose is the provision of affordable housing to low-income and moderate-income persons and that it spends at least 40% of the total amount of taxes that would have been imposed on the apartments on social, educational, and economic development services, capital improvements, or rent reduction. Thus, AHF is a tax exempt entity for the purposes of section 11.182(b). As it effectively owns and controls TRQ through the partnership arrangements discussed above, AHF bears ultimate responsibility for any tax burden placed upon TRQ, *i.e.*, any tax placed on TRQ will flow back through the partnership chain to AHF. *See* 126 U.S.C. § 701, *et seq.*

As we read the statute, it would be inconsistent with the intent of the Legislature to interpret section 11.182(b) in such a way that AHF, which holds equitable title to the apartments; is ultimately responsible for paying any taxes associated with them, and spends at least 40% of the amount that would be paid in taxes on social services and improvements to the apartments, is ineligible to receive a tax exemption that it would otherwise qualify for if it held legal title to the apartments. The Legislature enacted section 11.182(b) in 1997 to promote the availability of low-income housing through the provision of tax exemptions for certain charitable organizations. *See* HOUSE COMM. ON FINANCE, BILL ANALYSIS, Tex. H.B. 137, 75th Leg., R.S. (1997). To tax TRQ separately, even though it is wholly owned and controlled by an exempt entity (AHF), would defeat the Legislature's purpose in enacting section 11.182. *See Southeast Tex. Hous. Fin.*, 991 S.W.2d at 22–23.

Our conclusion is supported by *Southeast Texas Housing Finance* in which the Amarillo Court of Appeals reached a similar conclusion in a case involving section 394.905 of the Texas Local Government Code, a statutory provision that provides tax exemptions to publicly owned property used for public purposes. *See id.* at 22 ("[T]o hold that the [appellant's] wholly owned subsidiaries are separately taxable while the [appellant] is exempt would defeat that [L]egislature's purpose ..." in enacting the tax exemption provided for by section 394.905 of the Local Government Code). Our conclusion is further supported by the fact that Texas courts have found that CHDO status, a necessary condition to receiving an exemption under sec-

tion 11.182(b), can be imputed to non-CHDO subsidiaries that are wholly owned and controlled by an organization qualifying as a CHDO. *See Agape Neighborhood Improvement, Inc.*, 57 S.W.3d at 602. Thus, for the purposes of section 11.182(b), AHF's CHDO status may be imputed to TRQ.

The Appraisal District cites *American Housing Foundation v. Brazos County Appraisal District* in support of its position that only legal title holders can claim section 11.182(b) ad valorem exemptions. 166 S.W.3d 885 (Tex.App.—Waco 2005, pet. denied). Although the Appraisal District reads *Brazos County* as holding that an equitable owner cannot qualify for an exemption under section 11.182(b), the Waco court did not specifically address that question. Rather, it *assumed* that the term "owner" in subsection 11.182(b) referred only to a legal owner, not to an equitable owner. It then reasoned that (1) AHF was not the legal owner as required by subsection 11.182(b); (2) the legal owner, as here a partnership, was not a CHDO; and, therefore, (3) the exemption was not available.

The court then went on to construe subsection 11.182(e),[7] which was added to section 11.182 in 2001. Subsection 11.182(e)

requires that *"[i]n addition to meeting the applicable requirements of subsections (b) and (c),"* an organization seeking an exemption under subsection (b) for property constructed after December 31, 2001, must "control 100% of the interest in the general partner if the project is owned by a limited partnership." TEX. TAX. CODE ANN. § 11.182(e) (emphasis added). The court held that the addition of subsection 11.182(e) expanded the tax exemption available to CHDOs in section 11.182 to include organizations with equitable ownership, like AHF, that were previously barred from ownership for exemption purposes. *Brazos County,* 166 S.W.3d at 889. We disagree with this construction of the statute for two reasons.

First, *Brazos County's* construction of section 11.182 is internally inconsistent. New subsection 11.182(e) requires that an organization seeking an exemption under section 11.182 meet the requirements in subsection 11.182(b), which *Brazos County* construes as requiring legal ownership of the property for which an exemption is sought. But subsection 11.182(e) provides that "if the project is owned by a limited partnership," the organization seeking the exemption must "control 100 percent of the interest in the general partner." TEX.

---

7. Section 11.182(e) provides that:

 (e) In addition to meeting the requirements of Subsection[ ] (b) ... to receive an exemption under Subsection (b) for improved real property that includes a housing project constructed after December 31, 2001, and financed with qualified 501(c)(3) bonds issued under Section 145 of the Internal Revenue Code of 1986, tax-exempt private activity bonds subject to volume cap, or low-income housing tax credits, the organization must:

 (1) control 100 percent of the interest in the general partner if the project is owned by a limited partnership;

 (2) comply with all rules and laws administered by the Texas Department of Housing and Community Affairs applicable to community housing development organizations; and

 (3) submit annually to the Texas Department of Housing and Community Affairs and to the governing body of each taxing unit for which the project receives an exemption for the housing project evidence demonstrating that the organization spent an amount equal to at least 90 percent of the project's cash flow in the preceding fiscal year as determined by the audit required by Subsection (g), for eligible persons in the county in which the property is located, on social, educational, or economic development services, capital improvement projects, or rent reduction.

 TEX. TAX. CODE ANN. § 11.182(e).

TAX. CODE ANN. § 11.182(e). Subsection 11.182(e) clearly provides for an exemption for a CHDO that is only the equitable owner of property whose legal owner is a partnership, as here. But if the owner must be the legal owner in order to satisfy subsection 11.182(b), then no CHDO which owns property indirectly can ever qualify for the exemption under subsection 11.182(e) because, by definition, it is not the legal owner. But if that is so, subsection 11.182(e) is meaningless because it assumes that a CHDO which controls a limited partnership that owns taxable property *can* be the owner of the property for purposes of obtaining the exemption, so long as it controls 100% of the general partner of the partnership.

The only way that subsection 11.182(e) makes sense is if it is understood not as *expanding* the tax exemption available under section 11.182 to CHDOs that control limited partnerships which own taxable property, but as *limiting* an exemption already available to equitable owners under section 11.182 to only those CHDOs which control 100% of the general partner of a limited partnership that owns taxable property committed to non-profit housing. This natural reading of the statute is supported by the legislative history of the amendment.

As stated above, the Legislature enacted section 11.182(b) in 1997 to promote the availability of low-income housing through the provision of tax exemptions for certain charitable organizations. *See* HOUSE COMM. ON FINANCE, BILL ANALYSIS, Tex. H.B. 137, 75th Leg., R.S. (1997). Subsection 11.182(b) did not define "owner" or "owns," but existing Texas common law had long recognized that an equitable title holder may be considered an owner

for taxation purposes. *See Texas Turnpike Co. v. Dallas County,* 153 Tex. 474, 271 S.W.2d 400, 401—02 (1954). In 2001, the Legislature became concerned that organizations were too easily qualifying for tax exemptions under subsection 11.182(b), thereby depleting community tax revenues without an equivalent return to the low-income housing market. To counteract this, the Legislature enacted subsection 11.182(d), which required organizations receiving exemptions to reinvest a portion of the exemption into social welfare programs, and subsection 11.182(e), which added requirements that an organization must satisfy to qualify for an exemption on any property constructed after December 31, 2001. *See* HOUSE COMM. ON FINANCE, BILL ANALYSIS, Tex. H.B. 3383, 77th Leg., R.S. (2001). One of the additional requirements is that an organization can receive a tax exemption for a project owned by a limited partnership only if it controls a 100% interest in the general partner of that partnership. TEX. TAX CODE ANN. § 11.182(e). But this requirement specifically applies only to properties built after December 31, 2001. *See id.* Recognizing the former abuse and the purpose of the reform, Senator Eddie Lucio, Jr., a sponsor of the 2001 amendments to subsection 11.182, stated, "I am pleased that the accountability provisions of this bill will result in lower rents, cleaner properties; and a stronger accountability standard for community housing projects. It is not uncommon for abuses to occur when tax exemptions are not backed by rigorous measures, so this bill tightens regulations and enhances the reinvestment program." [8]

This review of the statute's language, origins and amendments yields

**8.** Press Release, From the Office of State Senator Eddie Lucio, Jr., District 27, Senate Approves Bill Sponsored by Sen. Lucio that Tightens Reinvestment Requirements for Community Housing Development Organizations (May 22, 2001), available at http://www.senate.state.tx.u s/75r/senate/members/dist27/pr01/p052201a.htm.

only one conclusion, namely, that by enacting subsection 11.182(e) the Legislature sought to restrict exemptions available to property owners under section 11.182, not to expand them. Thus, a natural reading of the statute, taking account of its plain language and legislative history, demonstrates that: (1) subsection 11.182(b) enabled qualifying organizations to obtain ad valorem tax exemptions on properties of which they were either the legal owner or the equitable "owner"; (2) a determination was made that exemptions were being granted too liberally; (3) the Legislature enacted subsection 11.182(e) to require that an organization seeking an exemption for a property owned by a limited partnership must control a 100% interest in the limited partnership's general partner; and (4) the requirements of subsection 11.182(e) were applied only prospectively, *i.e.,* to properties built after December 31, 2001. Therefore, we interpret subsection 11.182(b) to mean that an organization seeking an exemption on a property owned by a limited partner and built before December 31, 2001 need not show that it controls a 100% interest in the limited partnership's general partner. Rather, it need only show that it "owns" the property, be it equitably or legally. Consequently, we reject the Appraisal District's contention that an equitable owner of a property built before December 31, 2001 cannot qualify for an exemption under subsection 11.182(b).

Because we conclude that an otherwise qualified equitable property owner may obtain an exemption from ad valorem taxes pursuant to subsection 11.182(b) of the Texas Tax Code, we sustain appellant's first issue on appeal.

**Does section 11.436 of the Texas Tax Code provide an exception extending the filing deadline for 11.182 exemptions?**

■ Appellant's second issue on appeal requires us to consider whether section 11.436 of the Texas Tax Code extends the deadline for filing applications for tax exemptions pursuant to section 11.182.

Generally, eligibility for a tax exemption is determined on January 1 of the year in which the exemption is sought. *See* TEX. TAX. CODE ANN. § 11.42(a). Moreover, "To receive an exemption the eligibility for which is determined by the claimant's qualifications on January 1 of the tax year, a person required to claim an exemption must file a completed application before May 1." *See id.* § 11.43(d). Thus, to claim an exemption for the apartments in 2003 under section 11.43(d), appellants would have had to file their application prior to May 1, 2003. Section 11.436(a), however, provides an exception to the general filing deadline. According to the version of section 11.436(a) in effect in 2003:

> (a) An organization that acquires property that qualifies for an exemption under Section 11.181(a) or 11.182(a) may apply for the exemption for the year of acquisition not later than the 30th day after the date the organization acquires the property, and the deadline provided by Section 11.43(d) does not apply to the application for that year.

Act of June 17, 1997, 75th Leg., R.S., ch. 715, 1997 Tex. Gen. Laws 2358, 2361.

Here, appellants filed their application on December 30, 2003, and thus would be disqualified from obtaining a 2003 exemption if the filing deadlines stated in section 11.43 applied. Appellants contend, however that they are entitled to the 30–day exception provided by section 11.436 because (1) they acquired the apartments on December 30, 2003 and (2) the apartments did not qualify for an exemption under section 11.182 until they were acquired by appellants. Conversely, the Appraisal District argues that section 11.436 does not apply in appellant's case because the

apartments have not been acquired by anyone since TRQ purchased them from WHUD in 1998. In effect, the Appraisal District reasserts the argument it used in claiming that AHF could not receive an exemption under section 11.182(b)—legal title was never transferred to AHF, and hence AHF never acquired the apartments, as required by section 11.436.

We agree with appellants. Having held that AHF equitably owns the apartments, we similarly hold that AHF acquired the apartments for the purposes of section 11.436 when AHF obtained an effective controlling interest in TRQ. It was not until the apartments were acquired by AHF that AHF qualified for an exemption under section 11.182. Therefore, we conclude that, pursuant to section 11.436, AHF had 30 days from December 30, 2003, in which to file its application for an exemption.

As its application was filed on December 30, 2003, we sustain appellant's second issue on appeal.

### RESPONSE TO THE DISSENT

We respectfully disagree with the dissent's reasoning and conclusions.

The dissent asserts that "[a]n equitable title holder is not an owner for taxation purposes unless the legal title holder is legally encumbered, or a dispute as to the legal title holder's identity exists." It cites *Texas Turnpike Co.*, 271 S.W.2d at 401–02, as authority for this proposition, and then states: " 'Equitable title' for property tax purposes thus does not exist absent uncertainty as to actual, legal title, or legal encumbrance (as, for example, between trustees and beneficiaries or estate administrators and heirs)." With all due respect to the dissent, this is not the proposition for which *Texas Turnpike* and its progeny stand. *Texas Turnpike* states:

Undoubtedly the equitable title is the taxable title in those situations in which the grantee takes possession under a deed in which a vendor's lien is reserved or under a contract of sale by which the vendee is obligated to pay the purchase price.... Undoubtedly, also, this court has said that the grantee in a conveyance held in escrow is the owner of the equitable title to the property conveyed.... But in the latter cases taxable ownership was not the issue. Moreover, in such cases delivery of the conveyance by the escrow agent was dependent upon performance of certain conditions by the grantee; *the grantee had it in his power to perform the conditions to compel the delivery of the conveyance transferring legal title.*

*Id.* at 402 (citations omitted) (emphasis added). The court then went on to distinguish the facts in the case at bar, holding that the state, under the circumstances of that case, was not the equitable owner of land for tax purposes because "the right of the state, as grantee, to acquire the deeds and the legal title they convey is entirely dependent upon performance of conditions by the grantors." *Id.* Thus, the state's interest in the property was not a vested interest, but purely contingent. *Id.*

Here, by contrast, the dissent admits that AHF owns 100% of CD Captain's Landing, which in turn owns 100% of TRQ Galveston, the taxpayer and legal title holder of TRQ Captain's Landing. As the 100% owner of both intervening entities, AHF *does* have "the present right to compel legal title" to TRQ Captain's Landing—there being no one there to stop the exercise of that power. Thus, AHF satisfies *Texas Turnpike Co.*'s definition of an equitable owner of property for tax purposes and that of its progeny. *See Texas Turnpike Co.*, 271 S.W.2d at 402 (defining equitable owner as one who has it "within his power to perform the conditions and compel the delivery of the conveyance transferring legal title"); *Signature Flight*

*Support Corp.*, 140 S.W.3d at 840 (observing that "a person holding 'equitable title' to property may be owner for taxation purposes; equitable title is defined as the present right to compel legal title"); *Comerica Acceptance Corp.*, 52 S.W.3d at 497 (construing "owner" as used in section 32.07 of Texas Tax Code, imposing property taxes on owner of property, as "a person or entity holding legal title to the property, or holding an equitable right to obtain legal title to the property"); *Southeast Tex. Hous. Fin.*, 991 S.W.2d at 23 (defining "equitable title" as "the present right to legal title" and holding that subsidiary corporations created by housing finance corporation to hold and operate low income housing were entitled to tax exemption for that property because owner of subsidiary corporations had present right to legal title and stating, "Where a tax exempt entity holds equitable title to property, the property is tax exempt"); *Tex. Dept. of Corrections v. Anderson County Appraisal Dist.*, 834 S.W.2d 130, 131 (Tex.App.—Tyler 1992, writ denied) (holding that state had taxable title to improvements to prison unit based on equitable title held by state); *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 460 (Tex.Civ.App.—Texarkana 1951, writ ref'd) (stating, "An equitable title is the present right to the legal title"). This Court's adoption of the dissent's refusal to recognize the concept of equitable title as distinct from legal title for taxation purposes when the person claiming equitable title has the present right to compel the transfer of legal title to itself would set up a conflict between this Court and each of the foregoing courts.

In addition, the dissent's reading of the scope of our opinion is far too broad. It is simply incorrect to claim, as the dissent does, that "TRQ and AHF seek to expand the principle of equitable title 'owners' to included classes of investors: *i.e.*, partners, limited partners, and limited liability

company members (and, by implication, corporate shareholders)." Rather, TRQ and AHF seek to avail themselves of a tax benefit clearly contemplated by the plain language of section 11.182—which expressly provides that "[i]n addition to meeting the requirements of Subsection [ ] (b) ... to receive an exemption under Subsection (b) for improved real property that includes a housing project constructed after December 31, 2001, and financed with qualified 501(c)(3) bonds issued under Section 145 of the Internal Revenue Code of 1986, tax-exempt private activity bonds subject to volume cap, or low-income housing tax credits, [a CHDO] must: (1) control 100 percent of the interest in the general partner if the project is owned by a limited partnership...." TEX. TAX CODE ANN. § 11.182(e). And they seek this tax benefit under established principles of state law that recognize the Legislature's right to confer property tax benefits on an indirect owner of property used for statutorily prescribed public purposes as an "equitable owner" of the property when the indirect owner has a present right to compel legal title to the property.

Interpreting section 11.182 as the dissent urges us to do—to exclude a CHDO which controls 100% of the general partner of a limited partnership that holds legal title to non-profit low and moderate income housing from the tax exemption available to the owner of such property under section 11.182—not only would generate a conflict with the plain language of section 11.182, with established law construing the concept of equitable title for tax purposes, and with federal law governing similar arrangements, it would also undermine the express legislative purpose of section 11.182, which is to promote the availability of low-income housing through the provision of tax exemptions for certain charitable organizations, namely CHDO's, in return for the investment of at least

40% of that lost tax revenue in legislatively approved public purposes. Therefore, we cannot agree that this Court should adopt the dissent's construction of section 11.182.

## CONCLUSION

We reverse the summary judgment granted in favor of the Appraisal District, grant appellant's cross-motion for partial summary judgment, and render judgment that, as the equitable owner of TRQ, AHF qualifies for the exemption in section 11.182(b) of the Texas Tax Code and that its application for the exemption was timely filed pursuant to section 11.436 of the Code.

Justice BLAND, dissenting.

JANE BLAND, Justice, dissenting.

TRQ could not claim a property tax exemption because it is the owner and legal title holder of the property at issue, but it is not a charitable community housing development organization. Instead, it is a Texas limited partnership that did not seek or obtain non-profit or CHDO status during 2003.[1] The applicable provision governing tax exemptions plainly restricts them to qualified CHDOs who *own* the property subject to taxation. Although AHF is a CHDO, it does not own the property, and thus it is not legally obligated to pay any tax levied on the property. The majority concludes that an investor in a duly organized limited liability entity holds "equitable title" to property owned by the entity in which it invests, and then further concludes that such title is suffi-

cient to allow the limited liability entity to assert the investor's CHDO status. Because the statute does not confer imputed exemptions, I respectfully dissent.

***The statute requires ownership.***

Section 11.182 of the Texas Tax Code allows a CHDO to claim a property tax exemption for real property it owns. *See* TEX. TAX CODE ANN. § 11.182 (Vernon Supp.2005). In particular, subsection (b) provides:

(b) An organization is entitled to an exemption from taxation of improved or unimproved real property it *owns* if the organization:

(1) is organized as a community housing development organization;

(2) meets the requirements of a charitable organization provided by Sections 11.18(e) and (f);[2]

(3) *owns* the property for the purposes of building or repairing housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family; and

(4) engages exclusively in the building, repair, and sale or rental of housing as described by Subdivision (3) and related activities.

*Id.* § 11.182(b) (emphasis added). Thus, not once, but twice, the statute requires that the CHDO own the property. It does not define "owns." As the majority ob-

---

1. At oral argument, counsel for AHF and TRQ represented that non-profit status was unavailable for Texas limited partnerships in 2003. Moreover, the transaction that created the entities involved occurred on December 30, 2003, creating practical exigencies in obtaining tax exempt status.

2. Sections 11.18(e) and (f) of the Texas Tax Code provide, inter alia, that a charitable

organization (1) may not accrue distributable profits or pay salaries exceeding a reasonable allowance for services rendered; (2) must use its assets to perform charitable functions; and (3) must adopt a bylaw or regulation mandating that upon dissolution, the organization's assets are to be transferred to the State or a qualified charitable organization. *See* TEX. TAX CODE ANN. § 11.18(e), (f) (Vernon Supp.2005).

serves, TRQ and AHF contend "that the exemption should be imputed through the partnership chain and back to AHF." Thus, our decision turns on whether we impute ownership beyond the legal title holder for property tax exemption purposes. Nothing in the plain language of the statute permits such an interpretation, and cases interpreting the Tax Code have not done so. To the contrary, the Texas Supreme Court has held that an exemption from taxation should not be found unless the plain language of the statute confers it:

> Statutory exemptions from taxation are subject to strict construction since they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals. An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of [the] taxing authority and against the claimant.

*Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex.1979).

### The property tax obligation—and thus the corresponding exemption—rests with the legal title holder, as the owner.

"The person having legal title to property is generally considered to be the owner thereof for purposes of taxation." *Childress County v. State*, 127 Tex. 343, 349, 92 S.W.2d 1011, 1015 (1936); *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 840 (Tex. App.—Austin 2004, no pet.)(holding that lessees could not be taxed on property for which City of Austin held legal title). In rare instances, when the legal title holder to property is unclear or legally encumbered, courts will examine whether a party holds equitable title to real property. *See Signature Flight*, 140 S.W.3d at 840 ("In the absence of a clear legal title-holder, the holder of the equitable title is considered the taxable owner, while someone with only a contingent interest is not."). An

equitable title holder is not an owner for taxation purposes unless the legal title holder is legally encumbered, or a dispute as to the legal title holder's identity exists; rather, with rare exceptions, legal and equitable title are merged in a single owner. *See Tex. Tpk. Co. v. Dallas County*, 153 Tex. 474, 477–78, 271 S.W.2d 400, 401–02 (1954) (rejecting tax exemption for private turnpike entity based on contractual provision that State was equitable title holder of property). "Equitable title" for property tax purposes thus does not exist absent uncertainty as to actual, legal title or legal encumbrance (as, for example, between trustees and beneficiaries or estate administrators and heirs). Even in those instances, the property tax obligation lies with the legal title owner if one is determinable. *See Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581, 584 (Tex. 1993)("While it is true that the heirs hold equitable title to estate property, this interest does not give rise to tax liability. The responsibility for taxes lies with the administrator as holder of legal title.").

Moreover, a contingent interest is not an ownership interest in property. *Tex. Tpk.*, 271 S.W.2d at 402. A lienholder, for example, is not an "owner" for property taxation purposes, though it may have some future right to the property in the event of default. *See Childress County*, 127 Tex. at 351, 92 S.W.2d at 1016; *Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497 (Tex. App.—Dallas 2001, pet. denied)(holding that lienholder in possession of collateral pending foreclosure is not owner for property tax purposes).

### Investors are neither owners nor "equitable title holders."

In this case, TRQ and AHF seek to expand the principle of equitable title "owners" to include classes of investors: i.e., partners, limited partners, and limited

liability company members (and, by implication, corporate shareholders). AHF, however, does not hold "equitable title" to the apartments. Rather, it owns partnership and limited liability company equity interests of various sorts—primarily, in CD Captain's Landing, L.L.C., by virtue of its 100% membership interest in the company.[3] Secondarily, AHF has an interest in TRQ, through its interest in CD, because CD is the sole limited partner of TRQ. The general partner for TRQ is TRQ Galveston, L.L.C., another limited liability company, in which AHF also holds a 100% membership interest. Graphically, it looks like this:

Although the majority may be correct that, under principles of federal income taxation, AHF ultimately pays the taxes incurred by the partnerships and limited liability companies in which it invests, AHF does not bear liability for—and does not pay—any state property tax associated with the real property assets of the limited partnerships and limited liability companies in which it invests. Rather, liability rests with TRQ Captain's Landing, L.P., as title holder, and in the case of default, the property itself via a tax lien. *See Bailey,* 862 S.W.2d at 584. Tax liability never lies with AHF.[4]

**3.** Limited liability companies have "members," as opposed to partners or shareholders. *See* TEX. BUS. ORG. CODE ANN. § 101.101 (Vernon Supp.2005).

**4.** AHF could perhaps theoretically be held liable as a limited partner or a member of a limited liability company (or a corporate shareholder) to the extent one could prove that it engaged in conduct resulting in a loss of protections afforded to it under the various code provisions governing these business organizations (i.e., a piercing the veil theory),

This is because neither a general nor a limited partner has "the present right to compel legal title" to property owned by a partnership. It is axiomatic that partnership property is not the property of the partners, even of a general partner. *See* TEX. BUS. ORG. CODE ANN. § 152.101 (Vernon Supp.2005) ("Nature of Partnership Property: Partnership property is not property of the partners."). The same is true for members of limited liability companies. *See id.* § 101.106(b) ("A member of a limited liability company or an assignee of a membership interest in a limited liability company does not have an interest in any specific property of the company."). Thus, as the majority acknowledges, in order to gain title to the property in this case, AHF must dissolve or wind-up the affairs of the various partnerships and limited liability companies in which it has invested. Undeniably, it possesses the power to do so, but that is not tantamount to a present, vested right to compel title— it is, at best (assuming no default on creditors' secured interests or other material liens or claims on the assets of the partnership or limited liability company), a contingent right that could be asserted via a future course of action. *See Comerica,* 52 S.W.3d at 497 (noting that lienholders are not owners in part because they have no right to use or possession of property apart from future right of possession upon loan default).

Investors, without more, are simply not "equitable title holders" for real property purposes. Rather, investors are the equi-table owners of the business organizations in which they invest. Thus, I disagree with the Amarillo Court of Appeals's interpretation of "equitable title" and its holding in *Southeast Texas Housing Finance,* which the majority concludes is applicable to the Tax Code provision in this case. *See Harris County Appraisal Dist. v. Se. Tex. Hous. Fin. Corp.,* 991 S.W.2d 18, 22 (Tex.App.—Amarillo 1998, no pet.).[5] In deciding to classify investors as "equitable owners," our court and the court of appeals in *Southeast Texas Housing Finance* incorrectly apply *Texas Turnpike.*

In *Texas Turnpike,* the Texas Supreme Court denied a property tax exemption to a legal title holder, who sought to claim it on the basis that a public entity—the State—equitably owned the property, based upon the express characterization of it as an equitable title holder in legislation governing the Texas Turnpike Authority. *Tex. Tpk.,* 153 Tex. at 477, 271 S.W.2d at 401. Decided in 1954, the case did not deal with modern equity investment vehicles, but the court's overarching determination that any right to property must be vested to claim an exemption applies in today's context—contingent rights are not equitable ownership rights. *See id.* at 478, 271 S.W.2d at 402 (noting that "[the State's] interest in the property is not a vested interest; it is purely contingent").

Classifying investors as equitable owners ignores the very legal formalities that exist to differentiate investors from the business entities in which they invest and creates multiple "owners" for property tax

---

but such liability stems from its role as an investor, not a property owner.

5. I express no opinion about whether CHDO status may be imputed to a CHDO-related entity, in contrast to the imputation of property ownership beyond the property owner. One court of appeals has held such to be the case under federal CHDO guidelines, as incorporated into the Texas statutory scheme.

*See Orange County Appraisal Dist. v. Agape Neighborhood Improvement, Inc.,* 57 S.W.3d 597, 602 (Tex.App.—Beaumont 2001, pet. denied) (holding that subordinate unit of qualified CHDO may be considered CHDO for tax purposes where subordinate unit owns and operates property for reasons and purposes that are consistent with applicable eligibility requirements established for CHDOs).

purposes. In this case, for example, it creates at least four: AHF; CD Captain's Landing, L.L.C.; TRQ Galveston, L.L.C.; and TRQ Captain's Landing, L.P. The last of these has legal title, too, but one cannot ignore that it also has equitable title, for no legal encumbrance exists as to its ownership, and the legal title is undisputed.

Moreover, nothing requires three of these entities (all but AHF) to comply with the other provisions of Tax Code section 11.182(b). *See* TEX. TAX CODE ANN. § 11.182(b). For example, TRQ Captain's Landing need not pay salaries that are within "a reasonable allowance for services rendered," and need not "use its assets to perform charitable functions," as required by section 11.182(b)(2). *Id.* § 11.182(b)(2). The Legislature conditioned the right to a tax exemption upon fulfilling certain statutory obligations, but nothing compels the non-CHDO entity with an investor classified as an "equitable owner" to comply with these obligations.

Finally, subsection 11.182(e),[6] added to section 11.182 in 2001, does not suggest a different result. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 1191, § 1, 2001 Tex. Gen. Laws 2694, 2695, 2696 (current version at TEX. TAX CODE ANN. § 11.182(e) (Vernon Supp.2005)). By its express terms, the amendment imposes a limitation "[i]n addition to" compliance with subsections 11.182(b) and (c). TEX. TAX CODE ANN. § 11.182(e). Whatever the Legislature's intent in adding subsection (e), which requires that the CHDO be the sole general partner in limited partnership projects for an exemption to apply, it does not change the result in this case, because the amendment does not apply to projects constructed before 2002 (as this one was), and is "[i]n addition to" existing ownership requirements. *Id.* Furthermore, AHF is not the general partner of TRQ; rather, TRQ Galveston holds that interest.[7]

\* \* \* \* \* \*

6. Subsection 11.182(e) provides that:
 (e) In addition to meeting the requirements of Subsection[ ] (b) ... to receive an exemption under Subsection (b) for improved real property that includes a housing project constructed after December 31, 2001, and financed with qualified 501(c)(3) bonds issued under Section 145 of the Internal Revenue Code of 1986, tax-exempt private activity bonds subject to volume cap, or low-income housing tax credits, the organization must:
 (1) control 100 percent of the interest in the general partner if the project is owned by a limited partnership;
 (2) comply with all rules of and laws administered by the Texas Department of Housing and Community Affairs applicable to community housing development organizations; and
 (3) submit annually to the Texas Department of Housing and Community Affairs and to the governing body of each taxing unit for which the project receives an exemption for the housing project evidence demonstrating that the organization spent an amount equal to at least 90

percent of the project's cash flow in the preceding fiscal year as determined by the audit required by Subsection (g), for eligible persons in the county in which the property is located, on social, educational, or economic development services, capital improvement projects, or rent reduction.

TEX. TAX CODE ANN. § 11.182(e) (Vernon Supp.2005).

7. Although the wording in subsection (e) refers to "organization," "limited partnership," and "general partner" as though the "organization" as used in the amendment is a different entity than the limited partnership that owns the project, it then restricts the definition of qualifying organization to those limited partnerships that (1) own the property, (2) have the CHDO as the sole general partner of the project, and (3) otherwise meet the state and federal criteria for CHDOs. *See* TEX. TAX CODE ANN. § 11.182(e). As a limited partnership and its general partner are distinct business organizations, it is unclear how the same entity could both own the property as a limited partnership and be the general

Section 11.182(b) does not confer a tax exemption based on the charitable status of an investor in a company or limited partnership that owns the property. Using the required principle of strict construction, we should not impute one where it does not "affirmatively appear." *See Bullock*, 584 S.W.2d at 271–72.

**Southeast Texas Housing Finance** *is inconsistent with caselaw from the Texas Supreme Court and the Waco Court of Appeals.*

Because equity investors are not owners of the real property assets of the companies in which they invest, we should decline to follow the Amarillo Court of Appeals's decision in *Southeast Texas Housing Finance.* 991 S.W.2d 18 (Tex. App.—Amarillo 1998, no pet.). Instead, we should follow *American Housing Foundation v. Brazos County Appraisal District,* and hold that an investor seeking a section 11.182(b) exemption on behalf of an entity in which it invests does not qualify the entity as an "owner" under the statute when the entity, as legal title holder, does not qualify in its own right. 166 S.W.3d 885 (Tex.App.—Waco 2005, pet. denied). This approach is consistent with the Texas Supreme Court's opinions in *Bailey* and *Childress County*, regarding legal title, and its opinion in *Bullock*, requiring strict construction of statutes that confer tax exemptions. *See Bailey*, 862

S.W.2d at 584 ("The responsibility for taxes lies with the administrator as holder of legal title."); *Bullock*, 584 S.W.2d at 272 ("An exemption cannot be raised by implication, but must affirmatively appear . . . ."); *Childress County*, 127 Tex. at 349, 92 S.W.2d at 1015 ("The person having legal title to property is generally considered to be the owner thereof for purposes of taxation.").

The majority relies on a number of cases that define equitable title as "the present right to compel legal title." Save *Southeast Texas Housing Finance*, however, those cases do not define who holds equitable title; rather, they define who does not. Contractual obligees, while the contract is executory, do not. *Tex. Tpk.*, 153 Tex. at 478, 271 S.W.2d at 402. Lessees do not. *Signature Flight*, 140 S.W.3d at 840. Secured creditors do not. *Comerica*, 52 S.W.3d at 498. Investors do not, either, and we should so hold.[8] *Brazos County*, 166 S.W.3d at 889.

## CONCLUSION

AHF does not own the property that the appraisal district seeks to tax, and the exemption in Tax Code section 11.182(b) does not provide that charitable investors may assert an exemption on behalf of the non-charitable entities in which they invest, if those entities do not qualify for the

---

partner. One reading is that both the limited partnership and the general partner must be qualifying CHDOs, even if not the same CHDO. Another, as the majority points out, is that only the general partner need be a CHDO, who then may assert "ownership" of the property on behalf of the limited partnership. Still a third is that, under federal and state guidelines, a limited partnership that has a CHDO as its general partner qualifies as a CHDO in its own right. *See Orange County*, 57 S.W.3d at 602. Given its various possible interpretations and its later enactment, the amendment sheds little light on the meaning of "owns" in subsection (b).

8. Estate beneficiaries do, but they are not obligated to pay the tax; rather, the obligation rests with the legal title holder. *Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581, 584 (Tex.1993). Trust beneficiaries likewise hold equitable title. The majority notes that the Tyler Court of Appeals held, before the Texas Supreme Court's decision in *Bailey*, that the property tax burden rests with the trust beneficiary. *See Tex. Dep't of Corrections v. Anderson County Appraisal Dist.*, 834 S.W.2d 130, 131 (Tex.App.-Tyler 1992, writ denied). The opinion does not shed light on the question of equitable ownership as applied to investors in business organizations.

exemption in their own right under the statute. Classifying business investors as equitable owners of property held by the businesses in which they invest departs from the general rule that the legal title holder is the owner for property tax purposes and creates uncertainty as to the real property rights and obligations of Texas business entities. The trial court correctly ruled that the property tax must be paid. I therefore respectfully dissent.