OPINION



No. 04-06-00284-CV


 

JIM WELLS COUNTY APPRAISAL DISTRICT and 


Jim Wells County Appraisal Review Board,

Appellants



v.



CAMERON VILLAGE, LTD.,


Appellee



From the 79th Judicial District Court, Jim Wells County, Texas


Trial Court No. 04-08-42700-CV


Honorable Robert C. Pate, Judge Presiding (1)




Opinion by: Phylis J. Speedlin, Justice

Dissenting Opinion by: Rebecca Simmons, Justice


Sitting: Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice

 Rebecca Simmons, Justice


Delivered and Filed: July 18, 2007


REVERSED AND RENDERED

 

 Jim Wells County Appraisal District and Jim Wells County Appraisal Review Board
(collectively, "the Appraisal District") appeal the trial court's denial of their motion for summary
judgment, and granting of a cross-motion for summary judgment by Cameron Village, Ltd.
("Cameron Village"), which resulted in Cameron Village receiving an ad valorem property tax
exemption. In a case of first impression for this court, we must decide whether the legislature
expanded the tax exemption, or created a new exemption, when it amended section 11.182 of the
Texas Property Tax Code in 2001. Tex. Tax Code Ann. § 11.182 (Vernon Supp. 2006). Because
we conclude the 2001 amendment did not expand the existing exemption, or create a new stand-alone exemption, we reverse and render judgment in favor of the Appraisal District and hold that
Cameron Village is not entitled to the tax exemption. 

Factual and Procedural Background


 This appeal concerns an ad valorem property tax exemption sought by Cameron Village, the
owner of an apartment complex in Alice, Texas. Cameron Village's sole general partner,
Community Action Corporation of South Texas ("Community Action Corporation"), filed for an ad
valorem tax exemption on behalf of Cameron Village on December 30, 2003. Upon consideration,
the Jim Wells County Appraisal District denied the exemption; subsequently, the Appraisal Review
Board denied Cameron Village's protest, leaving the property on the county tax rolls. Cameron
Village then brought suit against both the Appraisal District and the Appraisal Review Board,
contesting the denial of the tax exemption. Each party stipulated to the material facts and agreed that
the controlling legal question in the case involved the applicability of section 11.182. Each side then
filed cross-motions for summary judgment on whether Cameron Village is exempt from the ad
valorem taxes. The trial court ultimately signed an order granting Cameron Village's motion for
summary judgment and denying the summary judgment motion by the Appraisal District. The order
states that the Cameron Village Apartments are exempt from ad valorem taxation, orders removal
of the apartments from the tax rolls of Jim Wells County effective December 24, 2003, and orders
all taxing authorities to refund any taxes paid by Cameron Village since that date. This appeal
followed. 

 Because the parties filed agreed stipulations, the facts in this case are not in dispute. 
Cameron Village was organized as a limited partnership in April 2000, and thereafter purchased land
in Alice, Texas, situated in Jim Wells County. The partnership was designed for "the acquisition,
sale, construction, development, leasing, management and financing of the [apartment] project." In
2001, Cameron Village began construction on the Cameron Village Apartments, a 76-unit apartment
complex. The apartments were developed as a qualified lower income housing project, and were
completed in 2002.

 Cameron Village has had three different general partners since its inception, but only its most
recent general partner, Community Action Corporation, is relevant to this appeal. Community
Action Corporation became the sole general partner of Cameron Village on December 24, 2003; as
the general partner, it owns 0.01 percent interest in the limited partnership. Community Action
Corporation is the first and only community housing development organization ("CHDO") to be the
general partner of Cameron Village. (2) As the record owner of the apartments, Cameron Village at
all times has paid the ad valorem taxes. Prior to December 24, 2003, Cameron Village never
claimed it was entitled to or qualified for a tax exemption. Six days after Community Action
Corporation became the sole general partner of Cameron Village, on December 30, 2003,
Community Action Corporation sought the ad valorem tax exemption at issue in this appeal. 

Standard of Review and Applicable Law

 Because the pertinent facts are stipulated and the only issue is the proper interpretation of
section 11.182 of the Property Tax Code, we review the trial court's order granting Cameron
Village's motion for summary judgment de novo. See Tex. Tax Code Ann. § 42.23(a) (Vernon
Supp. 2006); In re Forlenza, 140 S.W.3d 373, 376 (Tex. 2004) (statutory construction is a question
of law which appellate court reviews de novo); Am. Broad. Companies, Inc. v. Gill, 6 S.W.3d 19,
27 (Tex. App.--San Antonio 1999, pet denied), overruled in part on other grounds by Turner v.
KTRK Television, Inc., 38 S.W.3d 103 (Tex. 2000) ("[w]hether an order grants or denies a motion
for summary judgment, we apply the same de novo standard of review"). When both parties move
for summary judgment and the trial court grants one motion but denies the other, as in this case, the
appellate court reviews both sides' proof and determines all questions presented by the motions. 
Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). The appellate court
should then render the judgment the trial court should have rendered. Id.

 It has long been established that exemptions from taxation are strictly construed and that all
doubts are resolved against the exemption. See N. Alamo Water Supply Corp. v. Willacy County
Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991) (holding that "[s]tatutory exemptions from
taxation are subject to strict construction because they undermine equality and uniformity by placing
a greater burden on some taxpaying businesses and individuals rather than placing the burden on all
taxpayers equally"); see also Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist., 426 S.W.2d 943, 948
(Tex. 1968) ("tax exemptions are subject to strict construction since they are the antithesis of
equality and uniformity"). Accordingly, an exemption cannot be raised by implication, but must be
affirmatively shown, resolving all doubts in favor of the taxing authority and against the claimant. 
Bullock v. Nat'l Bancshares Corp., 584 S.W.2d 268, 272 (Tex. 1979).

 The primary objective in construing any statute is to determine and give effect to the
legislature's intent. Warner v. Glass, 135 S.W.3d 681, 683 (Tex. 2004). A court begins with the
plain and common meaning of the statute's words. Tex. Gov't Code Ann. § 311.011(a) (Vernon
2005) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar
and common usage"). When construing a statute, "we read every word, phrase, and expression . . .
as if it were deliberately chosen . . . ." Cordillera Ranch, Ltd. v. Kendall County Appraisal Dist.,
136 S.W.3d 249, 254 (Tex. App.--San Antonio 2004, no pet.). "If the meaning of the statutory
language is unambiguous, we adopt . . . the interpretation supported by the plain meaning of the
provision's words and terms." Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864,
865 (Tex. 1999). Extrinsic evidence of legislative intent is not analyzed if intent is apparent from
the language of the statute. See id. at 866 ("when we stray from the plain language of a statute, we
risk encroaching on the Legislature's function to decide what the law should be"); see also Minton
v. Frank, 545 S.W.2d 442, 445 (Tex. 1976).Discussion

 In their motions for summary judgment, and now on appeal, the parties disagree about the
proper interpretation and applicability of subsection (e) which was added to section 11.182 of the
Property Tax Code by the Legislature in 2001. (3) Tex. Tax Code Ann. § 11.182(e). We begin our
analysis with a brief historical perspective of the entire provision. Section 11.182 was first enacted 
in 1997 and was intended to provide a property tax exemption for CHDOs, as clearly proclaimed by
the statute's original title: "Community Housing Development Organizations Improving Property
for Low-Income and Moderate-Income Housing." Tex. Tax Code Ann. § 11.182. The relevant
provision at issue in this appeal, subsection (e), was then added in 2001; however, the basic
requisites for the exemption set forth in subsections (b) and (c) remained unchanged. (4) Id. 
Subsection (e) applies to "housing project[s] constructed after December 31, 2001, and financed with
. . . low-income housing tax credits . . . ." Id. at § 11.182(e).

 Cameron Village contends that the plain language of the newly created subsection (e)(1)
extends the CHDO exemption to property owned by a limited partnership if the CHDO controls 100
percent of the interest in the general partner and meets other "applicable" requirements. Cameron
Village maintains the Legislature intended this result because of "market place realities" so that
property financed with federal low-income tax credits would also be eligible for a state property tax
exemption. In support of its interpretation, Cameron Village emphasizes the following language of
the subsection:

 (e) In addition to meeting the applicable requirements of Subsections (b) and (c),
to receive an exemption under Subsection (b) for improved real property
that includes a housing project constructed after December 31, 2001, and
financed with . . . low-income housing tax credits, the organization must:

 

 (1) control 100 percent of the interest in the general partner
if the project is owned by a limited partnership;

 

 (2) comply with all rules of and laws administered by the Texas
Department of Housing and Community Affairs applicable to
community housing development organizations; and

 

 (3) submit annually to the Texas Department of Housing and Community
Affairs and to the governing body of each taxing unit for which the
project receives an exemption for the housing project evidence
demonstrating that the organization spent an amount equal to at least
90 percent of the project's cash flow in the preceding fiscal year as
determined by the audit required by Subsection (g), for eligible
persons in the county in which the property is located, on social,
educational, or economic development services, capital improvement
projects, or rent reduction. 


Tex. Tax Code Ann. § 11.182(e) (emphasis added).

 

 In response, the Appraisal District argues the newly created subsection (e) does not extend
or create a new exemption. It maintains that rather than granting a new, stand-alone exemption for
limited partnerships, a plain reading of subsection (e) shows that it only adds new requirements "for
housing projects constructed after December 31, 2001." In support of its argument, the Appraisal
District contends that the introductory phrase in subsection (e), "In addition to meeting the
applicable requirements of subsections (b) and (c) . . . ," means what it says. Id. (emphasis added). 
For the reasons stated below, we agree with the Appraisal District. 

Plain Language of the Statute

 When enacting subsection 11.182(e), the Legislature structured the new provision with two
introductory phrases followed by three requirements: "In addition to meeting the applicable
requirements of Subsections (b) and (c) . . . , to receive an exemption under Subsection (b) . . . the
organization must . . . (1) . . . (2) . . . and (3) . . . ." Tex. Tax Code Ann. § 11.182(e) (emphasis
added). By the plain meaning of its first three words, "in addition to," subsection (e) requires
compliance with the original requirements of "Subsections (b) and (c)," as well as the three new
requirements set forth in subsection (e). Id.; see also Am. Housing Found. v. Brazos County
Appraisal Dist., 166 S.W.3d 885, 889 n.2 (Tex. App.--Waco 2005, pet. denied) (holding subsection
(e) requires compliance with both subsections (b) and (c)). To meet the requirements of the original
subsection (b) (5), the organization (taxpayer) seeking an exemption must: (1) be organized as a
CHDO; (2) qualify as a charitable organization; (3) own the property for the purpose of building or
repairing housing on the property to sell without profit to a low-income or moderate-income
individual or family satisfying the organization's eligibility requirements or to rent without profit
to such an individual or family; and (4) engage exclusively in the building, repair, and sale or rental
of low-income housing. Tex. Tax Code Ann. § 11.182(b)(1)-(4). (6)
 Here, Cameron Village is the
record owner of the property; however, absent its interpretation of subsection (e), it would not
qualify for the tax exemption because it is not organized as a CHDO or a charitable organization. 
Id. 

 According to its interpretation, Cameron Village maintains that the plain language of
subsection (e)(1) extends the CHDO exemption for property owned by a limited partnership if the
CHDO controls 100 percent of the interest in the general partner. Tex. Tax Code Ann.
§ 11.182(e)(1). In essence, Cameron Village argues that subsection (e)(1) operates as a stand-alone
exemption provision. Our reading of the statute as a whole does not permit such a result. First, the
Legislature chose to begin subsection (e) with the words "in addition to," indicating that it is an
additional requirement to those provided in the original subsections (b) and (c), not a grant of a new
exemption. Second, Cameron Village's argument fails because it also ignores the significance of
the second phrase used in the new provision. The second phrase of subsection (e), "to receive an
exemption under Subsection (b)," clarifies that a new exemption is not being created. Instead, based
on the plain language used by the Legislature, subsection (b) remains the sole express grant of an
exemption. Id. at § 11.182(b), (e). Moreover, looking at subsection (e) in full context, it states that
". . . the organization must . . . ," and then lists (e)(1), (2) and (3). Id. at § 11.182(e). We interpret
this statutory structure as setting forth three requirements under the new subsection (e). Cameron
Village's argument would have us read (e)(1) separately, as an affirmative grant of a new exemption,
and then read (e)(2) and (e)(3) as mere requirements to be met for that new exemption. Such an
interpretation would read (e)(1) out of context and without regard to the structure of the entire
subsection (e).

 Finally, the wording of section 11.182(e)(1) is not the Legislature's typical phraseology
used when affirmatively granting an ad valorem tax exemption. In the Property Tax Code, the
Legislature generally uses explicit wording to grant an exemption, most uniformly employing the
following words: "An organization [or person or association] is entitled to an exemption from
taxation of . . . property it owns, if the organization [meets the stated requirements]." This standard
phrasing is used in subsection 11.182(b) and in no less than 27 other sections of Chapter 11 of the
Property Tax Code which grant exemptions to various property owners. Compare Tex. Tax Code
Ann. §§ 11.18 through 11.31 with § 11.182(e)(1) (Vernon 2001 & Supp. 2006). Accordingly, when
the Legislature intends to grant an exemption, it generally uses the same phrasing as a matter of
uniformity, and certainly could have done so in subsection (e) if it intended to create a new
exemption for limited partnerships with a CHDO as the sole general partner.

 Given the context, organization, and plain meaning of subsection 11.182(e), we hold that
section 11.182(e)(1) does not expressly create a new stand-alone CHDO exemption for "property
owned by a limited partnership" when the CHDO controls 100 percent of the interest in the general
partner. Therefore, the addition of subsection (e)(1) does not dispose of the requirement that the
owner of the property be a CHDO and a charitable organization.

Cameron Village's Additional Arguments

 Cameron Village also argues it is entitled to the tax exemption because: (1) subsection
(b)(3)'s ownership requirement is not an "applicable" requirement when the property (7) is owned by
a limited partnership; or, alternatively, (2) a CHDO's acquisition of 100 percent of the interest in the
general partner and concomitant control over the property is deemed equivalent to "ownership" of
the property.


 (1) The Modifier "Applicable"

 Turning first to Cameron Village's argument that the modifier "applicable" is critical,
Cameron Village maintains the only way subsections 11.182(e)(1) and 11.182(b) can be harmonized
is to find that property ownership by the CHDO is not an "applicable requirement" when a limited
partnership owns the property. In other words, Cameron Village argues the word "owns" in
subsection (b) should be disregarded because it must not be "applicable" when a limited partnership
owns the property. We disagree with Cameron Village's reading of the statute. 

 Statutory exemptions are subject to strict construction, and we cannot simply disregard the
term "owns." See Bullock, 584 S.W.2d at 271-72. Cameron Village's interpretation would require
us to disregard the ownership requirements expressed at least five times in subsections (b), (b)(3),
(c), (f), and (h) of section 11.182, essentially rewriting the section and violating all rules of strict
construction. See id.; see also, e.g., Tex. Tax Code Ann. § 11.182(b) ("[a]n organization is entitled
to an exemption from taxation of improved or unimproved real property it owns . . ."),
§ 11.182(b)(3) (listing the third of four requirements as "if the organization . . . (3) owns the
property for the purpose of building . . ."). The word "owns" has a plain and common meaning. 
See Tex. Gov't Code Ann. § 312.002 (Vernon 2005) (statutory "words shall be given their ordinary
meaning"). Any disregard of the word "owns" is simply a rewriting of the section, in violation of
the rule of strict construction which requires a clearly expressed grant of an exemption, not one
derived by implication or inference. See Bullock, 584 S.W.2d at 272. By the plain language of the
statute, the organization seeking an exemption must "own" the property and be organized as a
CHDO and charitable organization and be engaged exclusively in the sale or rental of low-income
housing as required by subsections 11.182(b)(1), (2), (3), and (4), before the new requirements of
subsection 11.182(e) become relevant. Tex. Tax Code Ann. § 11.182(b)(1)-(4) and (e). 

 Additionally, the statute must be construed to require ownership by the CHDO because the
state constitution mandates it. Baptist Memorials Geriatric Ctr. v. Tom Green County Apprisal
Dist., 851 S.W.2d 938, 944 (Tex. App.--Austin 1993, writ denied) (statute must be read in harmony
with constitutional requirements); Brazos River Conservation and Reclamation Dist. v. Costello, 143
S.W.2d 577, 580 (Tex. 1940) (constitutional provisions may be read into and considered a part of
the statute). Both the Texas Property Tax Code and the Texas Constitution provide for exemptions
from ad valorem taxation, and the taxpayer must satisfy both statutory and constitutional
requirements to qualify for a tax exemption. See N. Alamo Water Supply Corp., 804 S.W.2d at 899;
Hilltop Village, Inc. v. Kerrville Indep. Sch. Dist., 410 S.W.2d 824, 825 (Tex. Civ. App.--San
Antonio 1966), aff'd, 426 S.W.2d 943 (Tex. 1968). Article VIII, section 2(a) of the Texas
Constitution provides that, "[a]ll occupation taxes shall be equal and uniform upon the same class
of subjects . . . ; but the legislature may, by general laws, exempt from taxation . . . all buildings used
exclusively and owned by . . . institutions engaged primarily in public charitable functions . . . and
all laws exempting property from taxation other than the property mentioned in this Section shall be
null and void." Tex. Const. art VIII, § 2(a) (emphasis added). Therefore, under the Texas
Constitution, to qualify for a CHDO exemption as an entity engaged primarily in a public charitable
function, the CHDO must own the property; a for-profit limited partnership which is not a CHDO
would not qualify. 

 Moreover, Cameron Village cannot simply pick and choose among statutory requirements
which are listed in the conjunctive to determine which are "applicable" to them and which are not. 
Subsection 11.182(b) lists four requirements connected by the word "and." New subsection (e) then
adds other requirements that are "[i]n addition to meeting the applicable requirements of Subsection[]
(b) . . . ." Tex. Tax Code Ann. § 11.182(b), (e). Using its ordinary and common meaning, the term
"applicable" means "pertinent," or "appropriate." Black's Law Dictionary 90 (5th ed. 1979). 
Looking to subsection (b), we note that there are several parts that provide alternative methods of
meeting the requirements. For example, under subsection 11.182(b)(3), the CHDO must own the
property for a specified purpose: "building or repairing housing on the property to sell without profit
to a low-income or moderate-income individual or family . . . or to rent without profit to such an
individual or family." Tex. Tax Code Ann. § 11.182(b)(3) (emphasis added). Similarly, under
subsection 11.182(b)(4), the CHDO must be engaged exclusively in the "building, repair, and sale
or rental of housing as described by Subdivision (3) and related activities." Tex. Tax Code Ann.
§ 11.182(b)(4) (emphasis added). Therefore, some stated methods of meeting the requirements might
not be "applicable" or pertinent in all situations.

 (2) Deemed Ownership

 We now turn to Cameron Village's second argument. It asserts that when the CHDO owns
100 percent of the general partner, it therefore controls the property and should be deemed the
"owner" of the property for purposes of subsection 11.182(b)(3). Specifically, Cameron Village
contends Community Action Corporation's acquisition of 100 percent interest in the general partner
and concomitant control over the property should be deemed equivalent to direct "ownership" of the
property. For the reasons stated below, we conclude that this argument also fails.

 In support of its argument, Cameron Village cites us to TRQ Captain's Landing L.P. v.
Galveston Cent. Appraisal Dist., 212 S.W.3d 726 (Tex. App.--Houston [1st Dist.] 2006, pet. filed). 
TRQ involved the Captain's Landing Apartments, a Galveston complex purchased in 1998 by TRQ
Captain's Landing, L.P. ("TRQ"). As a result of several transactions in December 2003, American
Housing Foundation ("AHF"), a qualified CHDO, obtained ownership and 100 percent control of
TRQ's sole limited partner, CD Captain's Landing, L.L.C. ("CD"). TRQ, however, continued to be
the apartments' record titleholder. 

 After AHF became its sole limited partner, CD filed an application for an ad valorem tax
exemption for the apartments. Galveston Appraisal District denied CD's request because CD did not
own the property. AHF brought suit in district court. The trial court ruled for the appraisal district,
finding that CD was not a CHDO and did not own the project and that the application for a tax
exemption was not timely filed. The appellate court reversed the trial court holding that to be eligible
for an exemption pursuant to subsection 11.182(b) an applicant "need only show that it 'owns' the
property, be it equitably or legally." TRQ, 212 S.W.3d at 736. 

 TRQ, however, was a 2-1 decision. In a strongly worded dissent, Justice Bland concluded that
AHF, the CHDO, was not entitled to a tax exemption because it was not the legal "owner" of the
property subject to taxation. Id. at 739. The dissenting opinion noted that subsection 11.182(b) twice
requires that a CHDO "own" the property in order to qualify for a tax exemption, but never defines
the term "own." Id. "Thus, our decision turns on whether we impute ownership beyond the legal title
holder for property tax exemption purposes." Id. at 740. "Nothing in the plain language of the statute
permits such an interpretation, and cases interpreting the Tax Code have not done so. To the contrary,
the Texas Supreme Court has held that an exemption from taxation should not be found unless the
plain language of the statute confers it . . . ." Id. The dissent also states that entities which invest
in business organizations that own real property are simply the equitable owners of those
organizations, not the equitable owners of the property. Id. at 742. 

 With all due respect to our sister court, we find the dissent in TRQ to be the more persuasive
opinion. As the Texas Supreme Court has stated:

 Statutory exemptions from taxation are subject to strict construction since they are the
antithesis of equality and uniformity and because they place a greater burden on other
taxpaying businesses and individuals. An exemption cannot be raised by implication,
but must affirmatively appear, and all doubts are resolved in favor of [the] taxing
authority and against the claimant. Simply stated, the burden of proof is on the
claimant to clearly show that it comes within the statutory exemption. 


Bullock, 584 S.W.2d at 271-72 (emphasis added) (citations omitted). Accordingly, we decline to
follow the majority opinion in TRQ. Section 11.182 clearly requires ownership by the CHDO. Here,
Community Action Corporation, the CHDO, does not hold legal title to the property, and Cameron
Village, the legal owner, is a limited partnership that does not qualify for a tax exemption under
subsection 11.182(b). Accordingly, we conclude that Cameron Village is not entitled to a tax
exemption under section 11.182(b). In light of our resolution of the first issue, we need not address
the Appraisal District's argument that Cameron Village failed to timely file the application for a tax
exemption.

Conclusion

 Based on the foregoing reasons, we conclude that the Legislature did not expand the existing
tax exemption, or create a new stand-alone exemption, when it added subsection (e) to section 11.182
of the Texas Property Tax Code in 2001; subsection (e) merely added three requirements to the
existing CHDO exemption for housing projects constructed after December 31, 2001. Tex. Tax
Code Ann. § 11.182(e). Applying the principles of strict statutory construction as we must, a plain
reading of section 11.182 in its entirety, and subsections (b) and (e) in particular, demonstrates that
the exemption is intended only for an organization which "owns" the real property at issue, and which
is a CHDO and a charitable organization engaged exclusively in the sale or rental of low-income
housing. In other words, the CHDO must be the record owner of the property to qualify for the
exemption under section 11.182(b). Here, Cameron Village, the limited partnership, is the record
owner of the property, but is neither a CHDO nor a charitable organization, and thus does not meet
the requirements for the exemption set forth in subsection (b). Its general partner, Community Action
Corporation, is a CHDO, but it cannot meet the requirements of subsection (b) because Community
Action Corporation does not hold title to the apartments. Accordingly, Cameron Village did not
prove that it is entitled to the tax exemption as a matter of law; therefore, the trial court erred in
granting summary judgment in its favor. We reverse the judgment of the trial court and render
judgment in favor of the Appraisal District, holding that Cameron Village is not entitled to the tax
exemption under section 11.182. 

 Phylis J. Speedlin, Justice











1. Sitting by assignment. 
2. Community Action Corporation was chartered as a non-profit corporation in 1970, is a section 501(c)(3)
organization under the Internal Revenue Code, and is recognized by the Texas Department of Housing and
Community Affairs as a community housing development organization or CHDO. See 42 U.S.C.A. § 12704(6)
(West 2007); Tex. Tax Code Ann. § 11.182(a)(2). 
3. Act of June 15, 2001, 77th Leg., R.S., ch. 1191 § 1, 2001 Tex. Gen. Laws 2695 (current version at Tex.
Tax Code Ann. § 11.182(e) (Vernon Supp. 2006)).
4. Previous subsections (a) and (b) were renumbered as subsections (b) and (c) in the 2001 Act, but
otherwise remained unchanged. 
5. All parties agree that subsection (c) is not relevant to the issue that we must decide.
6. Subsection § 11.182(b) provides:

 (b) An organization is entitled to an exemption from taxation of improved or
unimproved real property it owns if the organization: 

 (1) is organized as a community housing development organization;

 (2) meets the requirements of a charitable organization provided by
Sections 11.18(e) and (f);

 (3) owns the property for the purpose of building or
repairing housing on the property to sell without
profit to a low-income or moderate-income
individual or family satisfying the organization's
eligibility requirements or to rent without profit to
such an individual or family; and 

 (4) engages exclusively in the building, repair, and sale or rental
of housing as described by Subdivision (3) and related
activities. 


 Tex. Tax Code Ann. § 11.182(b).


7. Cameron Village's argument fails to recognize or address the precise wording of subsection (e)(1) in
which the legislature chose to use the word "project," not the word "property," to describe what the limited
partnership "owns." Tex. Tax Code Ann. § 11.182(e)(1).